**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

v.

**JAMES CIVIL, Appellant in 78-1350 and CYMANDY JAMES, Appellant in 78-1351**

## Nos. 78-1350 and 78-1351

## United States Court of Appeals

### Third Circuit

## Argued December 15, 1978

## Filed January 26, 1979

■■■■■■■■

■■■■■■■■■■■■■■■

R. L. JONES, ESQ., Christiansted, St. Croix, V.I., *for appellant Civil*

JUDITH L. BOURNE, ESQ., Office of the Federal Public Defender, Christiansted, St. Croix, V.I., *for appellant James*

MARK L. MILLIGAN, ESQ., Assistant U.S. Attorney, Christiansted, St. Croix, V.I., *for appellee*

Before SEITZ, *Chief Judge*, WEIS and GARTH, *Circuit Judges*

## OPINION OF THE COURT

WEIS, *Circuit Judge*

A Virgin Islands statute repealed after defendants' trial required that accomplice testimony be corroborated before conviction could be had. Concluding that the repealed statute is applicable to crimes committed before its revocation, and finding no corroboration against one defendant, we vacate his conviction. We also hold that a coconspirator is an accomplice within the meaning of the statute and because the trial court's charge was at odds with that construction, we order a new trial on the conspiracy count against the other defendant.

Defendants Civil and James were convicted on charges of robbery, unauthorized use of a motor vehicle, and conspiracy to commit robbery. V.I. Code Ann. tit. 14, §§ 11, 1861, 1862(2), 1382, 551(1). Civil was convicted on an additional count of using a firearm during the commission of a robbery, id. § 2253. Before the cases were submitted to the jury, the court dismissed counts of kidnapping and petty larceny against both Civil and James.

The events leading up to the crimes occurred after an all-night drinking session, when Norman Smith took two men previously unknown to him, Kenneth Lawrence and Cymandy James, for a ride in his automobile. They first stopped at Christiansted Fort where Lawrence left in an unsuccessful search for marijuana. While he was on his errand, a policeman approached Smith and James as they sat in the automobile and asked them for identification. Satisfied with their responses, the officer walked away. The officer met Lawrence as he returned to the car and he, too, was asked to identify himself.

The three men drove to a restaurant where Smith and Lawrence had breakfast. James did not join them but called Lawrence aside and asked if Smith had any money. On learning that Smith did have some cash with him, Cymandy James sought and found James Civil, who, with a sawed-off shotgun concealed on his person, waited at the car with James for the others to finish their meals. When Smith and Lawrence returned to the automobile, the four men drove off, ostensibly still in search of marijuana. Smith was directed to drive to an isolated area of the island and was then forced at gun point to get out of the car, was robbed, and left behind while the three men escaped in his automobile.

Lawrence pleaded guilty before trial and in testimony for the prosecution implicated both James and Civil. Smith testified about the events leading up to the robbery and identified James in the courtroom. The police officer pointed out James and Lawrence as the men he saw with Smith at Christiansted Fort.

During his testimony, Smith referred to Civil by name as the one who had held the gun during the robbery. Smith admitted, however, that he had not known Civil before the robbery and had learned his name from the caption of the case and newspaper articles. Smith was not asked to and

did not identify Civil in the courtroom or, insofar as the record reflects, at any other time. Thus, the only testimony identifying Civil as the third robber was furnished by Lawrence.

At the conclusion of the prosecution's case, Civil moved for dismissal on the ground there was no corroboration of the accomplice's testimony linking him to the crime as required by Virgin Islands statute. The district judge ruled, however, that the corroboration statute did not apply to conspiracy and denied Civil's motion as well as James's general request for dismissal.

The judge charged the jury that corroboration of an accomplice's testimony was not necessary to prove a conspiracy but was required with respect to the substantive offenses of robbery, unauthorized use of a motor vehicle, and carrying a firearm during the commission of a robbery. The jury returned verdicts of guilty on all counts against both Civil and James. Both defendants have raised numerous issues on appeal, but we find only application of the corroboration statute to have merit.[1]

At the time of the robbery and at the time of trial, title 14, § 17 of the Virgin Islands Code provided:

"No conviction can be had upon the testimony of an accomplice unless it be corroborated by such other evidence as tends to connect the defendant with the commission of the crime. The corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission."

On October 25, 1978, a few weeks before argument of these appeals, Act No. 4229, repealing § 17 in its entirety, was signed into law. Our first consideration, therefore, is

---

[1] James also contends: (1) the trial judge erred in refusing to allow the defense to elicit testimony of misidentification of the accused and (2) it was reversible error for evidence of Lawrence's guilty plea to be admitted without curative instructions. Instructions on the latter point were not requested by the defendant and we find both of these contentions to lack merit.

whether to apply the statute on this appeal in light of the intervening repeal.

■■ As a general principle, an appellate court applies the law as it exists at the time of appeal even if different than at the time of trial. Bradley v. Richmond School Board, 416 U.S. 696, 711 (1970); United States v. The Schooner Peggy, 5 U.S. 103 (1801). The same precept controls in criminal cases, subject to the constitutional limitation against ex post facto laws. U.S. Const. art. I, § 9, cl. 3, § 10, cl. 1.[2]

■■ Although the term has not been defined with any precision, generally, an ex post facto law is one that imposes punishment for an act not considered to be criminal at the time it was committed.[3] Laws that condemn acts which were legal when committed, expand the definition of crimes, or impose additional penalties for acts already proscribed, clearly are barred by the ex post facto prohibition. Whether procedural changes effect an ex post facto result, however, is more difficult to determine. In the first Supreme Court discussion, Justice Chase's oft quoted opinion in Calder v. Bull, 3 U.S. 386, 390 (1798), listed the kinds of laws barred by the constitutional provisions, including:

"Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender."

Commenting on that early pronouncement, the Court later cautioned that statutory alterations do not fall within the ex post facto ban if they pertain to the mode of trial or the rules of evidence, do not deprive the accused of a de-

---

[2] Section 9 is a direction to Congress that "No Bill of Attainder or ex post facto Law shall be passed." Section 10 similarly provides: "No State shall . . . pass any Bill of Attainder [or] ex post facto Law."

   In civil cases the limiting test is whether application of the law in effect at the time of appellate review would work a manifest injustice. Bradley v. Richmond School Bd., supra at 711.

[3] See generally Dobbert v. Florida, 432 U.S. 282, 292–97 (1977); Geraghty v. United States Parole Comm'n, 579 F.2d 238, 263–66 (3d Cir. 1978).

fense, and operate only in a limited manner and insubstantial to his disadvantage. Beazell v. Ohio, 269 U.S. 167, 170 (1925). Thus, a statute removing the disqualification of certain classes of people who may be witnesses is not a proscribed ex post facto enactment. Hopt v. Utah, 110 U.S. 574 (1884), nor is a statute that changes the rules of evidence to allow testimony against an accused that was previously inadmissible, Thompson v. Missouri, 171 U.S. 380 (1898), or that deprives a codefendant of a previously existing right to a separate trial, Beazell v. Ohio, supra.

In contrast, the Court held violative of the ex post facto bar a state constitutional provision when retroactively applied to abrogate pre-existing law that made judgment and sentence for second degree murder an acquittal of first degree murder. Kring v. Missouri, 107 U.S. 221 (1883). A defendant also could not be retried and convicted under a state law requiring only eight jurors if, when the alleged offense was committed and the defendant was first tried, applicable law guaranteed a trial by jury of twelve. Thompson v. Utah, 170 U.S. 343 (1898). See also Cummings v. Missouri, 71 U.S. 277, 328 (1866).

In Beazell v. Ohio, supra at 171, the Court observed:

"Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation . . . and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance [citations omitted]."

There the Court approved the modified procedure, noting "[t]he quantum and kind of proof required to establish guilt, and all questions which may be considered by the court and jury in determining guilt or innocence, remain the same." Id. at 170.

■ Here the repeal of the corroboration statute reduces the amount of proof necessary for conviction. Unlike the permissible change in Hopt v. Utah, supra, the statute's repeal would "alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed." Id. at 589. Since it would deprive the accused of a substantial right that the law gave them at the time of the robbery, Kring v. Missouri, supra at 232, the repeal as applied to the case sub judice falls within the classes of changes prohibited by the ex post facto clause. See United States v. Henson, 486 F.2d 1292, 1306 (D.C. Cir. 1973) (en banc).[4] Accordingly, these cases must be decided as if § 17 were still in effect.

Both defendants contend that § 17 applies to all crimes including conspiracy and that the trial court erred in allowing the testimony of Lawrence alone to support their convictions. The government asserts that the statute does not apply because it refers only to "accomplices" and not to coconspirators, reasoning we are unable to accept.

■ In Virgin Islands v. Torres, 9 V.I. 616, 622, 476 F.2d 486, 490 (3d Cir. 1973), we said: "An accomplice is generally a person who could have been charged with the same offense as the person he testifies against, either as principal or accessory." Although Torres was concerned with substantive counts, the same rationale applies to conspiracy as well. Here Lawrence had actually been charged

---

[4] It has been argued that a statute applied in a case where the alleged crime was committed before passage and that alters a defendant's position to his disadvantage may run afoul of the Constitution on due process rather than ex post facto grounds. See Note, Ex Post Facto Limitations on Legislative Power, 73 Mich. L. Rev. 1491, 1515 n.86 (1975). Indeed, in Marks v. United States, 430 U.S. 188, 191–92 (1977), it was observed:

"The Ex Post Facto Clause is a limitation upon the powers of the legislature, see Calder v. Bull, 3 Dall. 386 (1798), and does not of its own force apply to the Judicial Branch of government. Frank v. Mangum, 237 U.S. 309, 344 (1915). But the principle on which the Clause is based—the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties—is fundamental to our concept of constitutional liberty. . . . As such, that right is protected against judicial action by the Due Process Clause of the Fifth Amendment."

with the conspiracy, as were the two defendants. Since we cannot perceive any distinction of substance between a co-conspirator and an accessory, we conclude that the district court erred in charging the jury that no corroboration of a coconspirator's testimony was required for conviction of that offense. Cf. New York v. Wheatman, 31 N.Y.2d 12, 286 N.E.2d 234, 334 N.Y.S.2d 842, cert. denied, 409 U.S. 1027 (1972) (applying that state's statute in considering the sufficiency of corroborating evidence to support conspiracy convictions).

The government points out that there was corroborative evidence as to the substantive counts in the record. We are in agreement with this contention insofar as Cymandy James is concerned. Therefore, we will order a new trial as to him on the conspiracy count only because of the error in the trial court's instructions; finding no error as to the other counts, those convictions will be affirmed.

The case against James Civil, however, stands in a different light. The only evidence in this case identifying Civil as a participant in the robbery came from Lawrence, unquestionably an accomplice. While in his testimony Smith referred to Civil by name, he did not identify him and it was clear that despite the use of defendant's name, the victim never established that the individual in the courtroom was a participant in the robbery.

We have held that corroborative testimony may be insubstantial and inconclusive of guilt, but it must be evidence tending to connect the defendant with the crime. Virgin Islands v. Castillo, 13 V.I. 650, 550 F.2d 850 (3d Cir. 1977); Virgin Islands v. Torres, supra. In this case, there is nothing more in the record than Lawrence's testimony to support Civil's conviction. At the close of the prosecution's case, Civil moved for dismissal of all charges against him. After explaining his theory exempting con-

85.

spiracy from the requirements of § 17, the prosecutor stated with commendable candor:

"I believe I would have to be honest and say, Judge, I don't believe there is any corroboration with respect to Mr. Civil, Mr. Civil's connection with this case is based solely on the testimony of Mr. Lawrence with respect to their conspiracy and the overt acts they committed in furtherance of conspiracy.

"I believe that is the theory upon which Civil's case is proceeded against in this matter."

■ Our independent review of the record confirms the prosecutor's statement that there was no corroboration of any kind implicating Civil. Since the requirements of § 17 have not been met, there is insufficient evidence to support conviction on any of the charges against him and therefore Civil must be acquitted. Burks v. United States, 437 U.S. 1 (1978); Greene v. Massey, 437 U.S. 19 (1978).

The judgment of conviction on Count I, the conspiracy count, as to Cymandy James will be vacated and a new trial will be granted on that count. The convictions on the remaining counts against him will be affirmed.

The judgments of conviction on all counts as to James Civil will be vacated and his case will be remanded to the district court with directions to enter judgment of acquittal.