Walter C. Tuthill, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for petitioner.

Duane D. Werb, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for respondents.

**UNITED STATES of America ex rel. Herbert F. STEIGLER, Petitioner,**

v.

**BOARD OF PAROLE and Walter Redman, Warden, Respondents.**

**Civ. A. No. 80–255.**

United States District Court, D. Delaware.

Nov. 14, 1980.

OPINION

STAPLETON, District Judge:

This is an action for habeas corpus relief, pursuant to 28 U.S.C. § 2254, brought by Herbert F. Steigler ("petitioner") against the Board of Parole of the State of Delaware ("the Parole Board") and Walter Redman, Superintendent of the Delaware Department of Corrections ("Respondents"). Petitioner seeks an Order directing his immediate release on parole.

At the time of the offenses for which petitioner was convicted,[1] as well as at the time of his sentencing and resentencing, the Delaware statute relating to the authority of the Parole Board to grant paroles and the procedures to be followed in parole proceedings provided in part that:

> (d) All paroles shall issue upon order of the Board duly adopted. Said order shall recite the conditions thereof, which may be altered as the Board may determine, and a copy shall be provided to the parol-

---

**32.** The hearing may held in the Court where the not guilty by reason of insanity verdict was rendered.

1. On January 30, 1970 petitioner was convicted by a jury in the Delaware Superior Court on three counts of first degree murder and on one count of assault with intent to commit murder.

ee and the Department. 11 Del.C. § 4347(d); 54 Del.Laws, c. 349, § 7 (approved July 8, 1964).

The rules of the Board[2] in effect at the above referenced times provided that "[a]ny action taken by the Board is decisive upon the agreement of a majority of the Board members." *Parole Board Procedures*, (Exhibit A, page J–3; Petitioner's Opening Brief). Thus, up through the time of petitioner's resentencing, the favorable vote of a simple majority of the membership of the Board was sufficient to grant paroles in all cases.[3]

On July 2, 1973, subsequent to the date of petitioner's resentencing, subsection (d) of Section 4347 was amended by House Bill No. 185 (as amended by House Amendments Nos. 3, 5 and 7)[4] to read in its entirety as follows:

(d) All paroles shall issue upon order of the Board duly adopted by at least three of the five members of the Board, provided, however, no person who has been convicted of and imprisoned for murder, rape, kidnapping or any offense relating to the sale, attempt to sell, delivery, or possession with intent to sell or deliver a narcotic drug shall be granted a parole except by order of the Board duly adopted by at least four of the five members of the Board. 59 Del.Laws, c. 125, § 1.[5]

Petitioner first appeared before the Board on March 18, 1975. Following that hearing, the Board recommended to the Board of Pardons that it award petitioner a reduction in sentence. On February 26, 1976, petitioner applied to the Board for a reduction in his parole eligibility date. Following a hearing on the matter, the Board granted petitioner's request and set a reduced parole eligibility date of June 11, 1979.

On October 10, 1978, petitioner applied to the Board for a further reduction in his parole eligibility and for an immediate release on parole. The report of the Department of Corrections (the "Department") submitted in connection with the application recommended a release on parole at that time. Notwithstanding the recommendation of the Department, the Board denied parole. By letter to petitioner dated November 9, 1978, the Board reported that three of its members had voted in favor of a parole and that two had voted against it. The November 9 letter stated: "As you may already know, a majority of four of the five Board Members must favor parole in your offense category before it may be granted."

Petitioner next appeared before the Board on August 28, 1979, and then again on August 26, 1980. In both instances, he met the same result: the vote was three in favor of parole, two against.

Petitioner's claim for relief herein is predicated on these three decisions of the Parole Board. Had the Board applied the "unamended" law on any of these occasions, then petitioner would have had the requisite votes for release on parole. The question for the court is whether the application

2. Section 4343(2) of Title 11, as in effect since 1964 (*see* 54 Del.Laws, c. 349, § 7) requires the Board to: ·
   Establish rules and regulations for the conduct of its own proceedings, and rules of procedure for the effective enforcement of the provisions of this chapter....

3. Since the effective date of 57 Del.Laws, c. 597, § 1, approved June 25, 1970, the Board has consisted of five members. Prior thereto, the Board consisted of three members. *See* 11 Del.C. 1953, § 7701; 54 Del.Laws, c. 349, § 7 (1964).

4. House Bill 185, Amendment No. 3, introduced by Representative Winifred Spence, would have required the unanimous vote of the Board to approve paroles in all cases. This amend-

ment was softened slightly by Amendment No. 5, approved May 3, 1973, which required the concurrence of four of the five members of the Board in all parole decisions. The bill, as so amended, failed to pass the House, and was further modified by Amendment No. 7 (passed May 8, 1953) which adopted the language set forth in the text. *See House Journal, 1973*, May 3, 1973, May 8, 1973.

5. Section 4347(d) has subsequently been amended to impose additional conditions on the granting of paroles in certain instances. *See* 60 Del.Laws, c. 707, approved August 5, 1976. The statutory language quoted in the text, however, has not been changed.

of the amended § 4347(d) to petitioner unfairly aggravated the conditions of punishment imposed upon him and thereby violate the provisions of Section 10, Article I of the United States Constitution relating to *ex post facto* laws.

In response to the petition, respondents urge that relief should be denied on two grounds: first, that parole is a matter of grace and a restriction on the availability of parole, accordingly, may not be said to adversely affect any right held by the defendant; and, second, that the change in Section 4347(d) was "only a procedural one".

Respondents' first argument is untenable. Courts have consistently regarded parole laws as part of the definition of the punishment provided for crime and have held that retroactive application of a change of law which substantially diminishes the possibility of parole violates the *ex post facto* clause. *See e. g., Warden v. Marrero,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974); *Geraghty v. United States Parole Commission,* 579 F.2d 238 (1978); *Shepard v. Taylor,* 556 F.2d 648 (2nd Cir. 1977).

Respondents' second argument, though of greater substance, is nevertheless unpersuasive. While the cases applying the *ex post facto* clause have distinguished between procedural changes and amendments which alter substantive standards, the distinction is more subtle than respondents' argument suggests. The recent decision of the Third Circuit Court of Appeals in *Government of Virgin Islands v. Civil,* 591 F.2d 255 (3d Cir. 1979) clearly demonstrates this fact. The *ex post facto* clause issue in the *Civil* case was raised by the repeal of a Virgin Islands statute providing that "[n]o conviction can be had upon the testimony of an accomplice unless it be corroborated by such other evidence as tends to connect the defendant with the commission of the crime." *Civil,* 591 F.2d at 257–58. The court held that repeal of that statute could not be given effect in a case where the alleged crime had been committed while the statute was still in force. Judge Weis' review of the *ex post facto* case law is significant help in resolving the issue currently before the court:

Although the term has not been defined with any precision, generally an ex post facto law is one that imposes punishment for an act not considered to be criminal at the time it was committed. Laws that condemn acts which were legal when committed, expand the definition of crimes, or impose additional penalties for acts already proscribed, clearly are barred by the ex post facto prohibition. Whether procedural changes effect an ex post facto result, however, is more difficult to determine. In the first Supreme Court discussion, Justice Chase's oft-quoted opinion in *Calder v. Bull,* 3 U.S. (Dall.) 386, 390, 1 L.Ed. 648 (1798), listed the kinds of laws barred by the constitutional provisions, including:

"Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender."

Commenting on that early pronouncement, the Court later cautioned that statutory alterations do not fall within the ex post facto ban if they pertain to the mode of trial or the rules of evidence, do not deprive the accused of a defense, and operate only in a limited manner and insubstantial to his disadvantage. *Beazell v. Ohio,* 269 U.S. 167, 170, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925). Thus, a statute removing the disqualification of certain classes of people who may be witnesses is not a proscribed ex post facto enactment, *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), nor is a statute that changes the rules of evidence to allow testimony against an accused that was previously inadmissible, *Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898), or that deprives a codefendant of a previously existing right to a separate trial, *Beazell v. Ohio,* supra.

In contrast, the Court held violative of the ex post facto bar a state constitutional provision when retroactively applied to abrogate pre–existing law that made judgment and sentence for second degree murder and acquittal of first degree mur-

der. *Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883). A defendant also could not be retried and convicted under a state law requiring only eight jurors if, when the alleged offense was committed and the defendant was first tried, applicable law guaranteed a trial by jury of twelve. *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898). See also *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 328, 18 L.Ed. 356 (1866).

In *Beazell v. Ohio*, supra, 269 U.S. at 171, 46 S.Ct. at 69, the Court observed: "Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation . . . and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance [citations omitted.]"

There the Court approved the modified procedure, noting "[t]he quantum and kind of proof required to establish guilt, and all questions which may be considered by the court and jury in determining guilt or innocence, remain the same." Id. at 170, 46 S.Ct. at 69.

Here the repeal of the corroboration statute reduces the amount of proof necessary for conviction. Unlike the permissible change in *Hopt v. Utah*, supra, the statute's repeal would "alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed." Id. [110 U.S.] at 589, 4 S.Ct. at 210. Since

it would deprive the accused of a substantial right that the law gave them at the time of the robbery, *Kring v. Missouri*, supra 107 U.S. at 232, 2 S.Ct. 443 [at 452], the repeal as applied to the case sub judice falls within the classes of changes prohibited by the ex post facto clause. See *United States v. Henson*, 159 U.S. App.D.C. 32, 46, 486 F.2d 1292, 1306 (D.C. Cir.1973) (en banc). Accordingly, these cases must be decided as if § 17 were still in effect.

591 F.2d at 258–59.

As respondents suggest, the amendment to Section 4347(d) can aptly be characterized as procedural; it relates to rules governing how a decision will be made rather than to the substantive standard to be applied. This does not end the matter, however. We must look to the purpose of the change and its practical effect on persons in petitioner's position. *Dobbert v. Florida*, 432 U.S. 282, 294, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977); *Geraghty v. United States Parole Commission*, 579 F.2d at 266–67; n. 149; Tribe, *Constitutional Law* (1978) §§ 10.1–10.3. The clear purpose of the change from majority rule to an 80% requirement was to make it substantially more difficult for particular classes of defendants to secure parole and in every instance where the application of the new rule has an impact, that impact is to require a greater quantity of proof of fitness for parole than would have been required under the prior law.[6]

Given the view of the above cited case law that the possibility of parole is part and parcel of the punishment for a crime, I find this case is indistinguishable from *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898). In that case the governing law at the time of the alleged offense

---

**6.** This is not a case like *Dobbert v. Florida*, supra, where a change in the decision–making process on capital punishment happened to have a grave negative impact on the particular defendant involved in the case but where the overall effect of the change was ameliorative, nor is it like those cases where the effect varies depending upon the facts of the particular case. See, e. g., *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925); *Thompson v. Missouri*,

171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898); *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). The change in Section 4347(d) does not operate to benefit some defendants and harm others, depending on their particular circumstances; the only effect it can have is to make it more difficult to secure conditional freedom on parole than under the old law.

had provided for a twelve person jury. As a result of a change of law, however, the defendant had been convicted by an eight person jury. As Judge Weis noted, this was found to violate the *ex post facto* clause. Just as this change operated to the disadvantage of all defendants in Thompson's class by reducing the number of persons whom the state had to convince of guilt, so the change in Section 4347(d) operates to the disadvantage of all defendants in Steigler's class by increasing the number of persons whom they must convince of suitability for parole.

As in *Geraghty*, 579 F.2d at 267, "the freedom of the . . . [Board] to grant parole . . . is constrained" by the amendment to Section 4347(d), "and the 'situation' of prisoners otherwise eligible for parole is 'altered to their disadvantage.'" It follows that the application of that section to petitioner's parole proceedings violated the *ex post facto* clause of Article I and that petitioner is entitled to relief. His custodian will be ordered to release him unconditionally unless he is released promptly on parole on conditions to be determined by the Parole Board.