**John H. BAILEY, Petitioner Below, Appellant,**

v.

**STATE of Delaware, Respondent Below, Appellee.**

Supreme Court of Delaware.

Submitted: June 19, 1990.
Decided: April 8, 1991.

13. Tragically, Colin died shortly after we an-    nounced our oral decision.

**1122**

Walter S. Rowland (argued), and Michael P. Kelly, Hercules, Inc., Wilmington, for appellant.

Gary A. Myers (argued), Dept. of Justice, Georgetown, for the State.

Before HORSEY, MOORE and WALSH, JJ.

MOORE, Justice.

In this most recent of several appeals filed by John H. Bailey [1], we address his latest post-conviction relief petition based on an alleged retroactive constitutional right which was not in existence when Bailey's convictions became final. Bailey appeals a dismissal of his petition under Superior Court Criminal Rules 61(i)(1) & (5). The trial court ruled that Bailey's petition was procedurally barred under Rule 61(i)(1) because it was filed more than three years after his conviction became final. The Superior Court also found that Bailey's petition did not otherwise raise any claims indicating a miscarriage of justice pursuant to Rule 61(i)(5).

The Superior Court properly dismissed Bailey's petition on procedural grounds. We reach this conclusion, however, on a different basis than that of the trial court. The case Bailey cited in his petition, *Perry v. Leeke*, 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), in our opinion, does not create a new "right" under Rule 61(i)(1) entitling him to relief. We also find that Bailey's petition, when stripped of its mer-

---

**1.** *See, e.g., Bailey v. State*, Del.Supr., 363 A.2d 312, 313 (1976), *cert. denied*, 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977) (*"Bailey I"*) (direct appeal); *Bailey v. State*, Del.Supr., 422 A.2d 956, 957–58 (1980) (*"Bailey II"*) (post-conviction relief); *Bailey v. Redman*, 502 F.Supp. 313 (D.Del.1980), *aff'd*, 657 F.2d 21 (3d Cir. 1981), *cert. denied*, 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 310 *reh'g denied*, 455 U.S. 995, 102 S.Ct. 1624, 71 L.Ed.2d 857 (1982) (Federal habeas).

itless claims to retroactive relief, does not raise a "colorable" constitutional challenge under Rule 61(i)(5). Accordingly, we affirm.

## I.

Bailey was indicted on a charge of first degree murder for shooting a twelve year old girl in the back. *See Bailey I*, 363 A.2d at 313. Bailey apparently was angry with the girl and other children whom he believed had stolen fruit from a peach tree in his backyard. *Id.* Five eyewitnesses testified at trial that they saw Bailey shoot the girl after first firing a warning shot and telling her to stop. *Id.* In addition to the eyewitnesses, the State presented expert testimony regarding the trajectory of the bullet. *Id.* at 314. The State also proved that Bailey possessed a gun and ammunition. *Id.* Bailey, however, denied shooting the girl or even owning a pistol at the time of the crime. *Id.*

Bailey was imprisoned throughout a lengthy jury trial. He took the stand in his own defense. His direct examination ended, after a luncheon break, during the early part of the afternoon. *See Bailey II*, 422 A.2d at 957–58. The State then immediately began its cross-examination which concluded at 5:15 p.m. *Id.* at 958. Cross-examination was to continue the next morning, and the following colloquy occurred before the court recessed:

> The Court: Mr. Bailey, during the evening recess, I caution you and instruct you that you are not to discuss your *testimony* with anybody until you have completed your testimony in this case. Do you understand?
>
> The Witness: (The witness nodded affirmatively.) *Id.* (Emphasis added).

The court then adjourned from 5:15 p.m. to 10:00 a.m. the next day for a total of seventeen hours. *Id.* Bailey's counsel never objected to the court's instruction at any point during the trial. *Id.*

Bailey was convicted of manslaughter and possession of a deadly weapon during the commission of a felony. He received consecutive sentences of thirty and ten years on the respective charges. This Court affirmed the convictions on direct appeal. *Bailey I*, 363 A.2d 312. Three years later, Bailey filed a Rule 35 motion for post-conviction relief, alleging that: (1) his consecutive sentences violated the double jeopardy clause; and (2) the trial court's admonition not to discuss the case with anyone during the seventeen hour break deprived him of effective assistance of counsel. Bailey's denial of assistance claim was premised on the United States Supreme Court's decision in *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). This Court vacated the consecutive sentences, but denied Bailey any relief on his *Geders* claim. *See Bailey II*, 422 A.2d at 965. Notably, this Court distinguished *Geders* on several grounds including: (1) the plain language of the trial court's instruction imposed only a testimonial limitation on Bailey's discussions with counsel, not a blanket prohibition as in *Geders;* (2) no timely objection was raised by Bailey's counsel as was done in *Geders;* (3) there was no showing of prejudice to Bailey, and *Geders* did not hold that prejudice could be presumed; (4) the District of Columbia Court of Appeals decision in *Jackson v. United States*, 420 A.2d 1202 (D.C.1979) (en banc), expanding *Geders*, was unwarranted; and (5) any error in the trial court's instruction was harmless beyond a reasonable doubt. 422 A.2d at 958–63.

Bailey then filed a habeas corpus proceeding in federal court. There, he was denied relief because: (1) the trial court's admonition did not foreclose all communications between Bailey and his counsel, but prohibited only those questions specifically related to his continuing testimony on cross-examination; and (2) in the absence of a timely objection, Bailey had not sustained the burden of showing that he had actually been precluded from conferring with his attorney. *See Bailey v. Redman*, 502 F.Supp. 313, 314 n. 2, 316 (D.Del.1980). The Third Circuit affirmed, but decided that it was unnecessary to address the district court's first holding because Bailey did not prove that he was actually deprived of his right to counsel. *See Bailey v. Red-*

*man,* 657 F.2d 21, 23 n. 3 (3d Cir.1981). The Third Circuit noted that while Bailey was not required to show the same prejudice necessary to survive the prejudice test mandated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), he still had to "demonstrate that he wanted to meet with counsel, but was prevented from doing so by the court's instruction." *Id.* at 24. The United States Supreme Court again declined to review Bailey's case. *See Bailey v. Redman,* 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 310 (1982).

Seven years later, in June of 1989, Bailey filed another post-conviction relief motion under both former Superior Court Criminal Rule 35 and present Superior Court Criminal Rule 61, reasserting his *Geders* claim in light of the United States Supreme Court's recent decision in *Perry v. Leeke,* 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989). According to Bailey, *Perry* held that a defendant was not required to show any sort of prejudice in Sixth Amendment claims involving an overnight recess. The Superior Court dismissed Bailey's post-conviction relief application on procedural grounds after briefly reviewing the merits. *See State v. Bailey,* Del.Super., Cr.A. Nos. IN75–08–0322R1, IN75–09–0073R1, Bifferato, J., Letter op. at 2, 1989 WL 135733 (Oct. 24, 1989). The trial judge ruled that Bailey's application was barred because it was filed more than three years after his conviction became final. *Id. See* Super.Ct.Crim.R. 61(i)(1) ("Rule 61"). Moreover, the trial court noted that Bailey did not appear to meet the test for a miscarriage of justice exception of Rule 61(i)(5). Letter op. at 2. The court instead found that:

1) *Perry* does not hold that a defendant has a constitutional right to confer with his attorney during a break in cross-examination concerning a defendant's testimony; 2) petitioner's facts do not indicate an interference or deprivation and therefore *Perry* is inapplicable here; and 3) both the Supreme and the federal courts disposed of petitioner's motion on grounds other than failure to show prejudice. *Id.*

Bailey now appeals that dismissal to this Court.

## II.

■ Bailey first argues that he is not subject to the time limitation provisions of Rule 61(i)(1) because he filed a motion for post-conviction relief under an older version of Rule 35(a) which did not contain a time bar. *See* Super.Ct.Crim.R. 35(a) (1975). Bailey claims that the Superior Court amended Rule 35 in 1987 to conform to a similar change in the Federal Rules of Criminal Procedure making the Rule applicable only to sentencing errors. Bailey asserts that the changed Federal Criminal Rule 35(a) was not meant to apply retroactively. Bailey concludes that the new provisions of Delaware Superior Court Criminal Rule 61 therefore cannot apply retroactively to criminal defendants convicted prior to 1987. Bailey thus maintains that application of the Criminal Rule 61(i)(1) time bar provisions to his current post-conviction application violates the constitutional ban against *ex post facto* laws.

The trial court did not address Bailey's *ex post facto* argument. Generally, this Court reviews the Superior Court's decision on an application for post-conviction relief under both Rules 35 and 61 for an abuse of discretion. *See Harris v. State,* Del.Supr., 410 A.2d 500, 502 (1979). Nonetheless, we review questions of law *de novo. See, e.g., Younger v. State,* Del.Supr., 580 A.2d 552, 554 (1990).

### A.

■ Bailey's interpretation of the non-retroactive effect of the Rule 35 amendment is incorrect. Application of Rule 61 to his post-conviction relief petition does not violate the constitutional ban against *ex post facto* criminal laws. Generally, a criminal law violates the *ex post facto* clause of the United States Constitution if: (1) the law applies to events occurring prior to its enactment; and (2) the changed law adversely affects the offender. *See Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). The Fram-

ers of our Federal Constitution drafted the *ex post facto* clause to assure the public that legislative acts would give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. *Id.* at 28–29, 101 S.Ct. at 964. The *ex post facto* clause, however, was not meant to restrict legislative or judicial control of remedies and modes of procedure which do not affect substantive rights. *See Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344, *reh'g denied,* 434 U.S. 882, 98 S.Ct. 246, 54 L.Ed.2d 166 (1977); *Beazell v. Ohio,* 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925).

■ Purely procedural changes do not violate the *ex post facto* prohibition. *See Dobbert,* 432 U.S. at 293–94, 97 S.Ct. at 2298–99 (statutory change in role of judge and jury in determining whether to impose death penalty not an *ex post facto* law where change took away presumption that death should be imposed but simultaneously authorized judges to override juries' determination where insufficient mitigating circumstances exist). A change in the criminal law is procedural when that law does not affect either " '[t]he crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish [the defendant's] guilt....' " *See Dobbert,* 432 U.S. at 294, 97 S.Ct. at 2298–99 (quoting *Hopt v. Utah,* 110 U.S. 574, 589–90, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884)). Here, that clearly is the case.

The Superior Court created a purely procedural change in the law under the *Dobbert* standard when it adopted Rule 61 in 1987 and superseded the previous version of Superior Court Criminal Rule 35. Rule 61 was adopted to create a mechanism for presenting collateral claims for post-conviction relief. The order promulgating the new rule made it applicable to all pending and future post-conviction relief applications unless it was unfeasible or unjust. The change, importantly, did not affect the extent of Bailey's punishment and the quantity or the degree of proof necessary

to establish his guilt. While the alteration of a statute of limitations can affect substantive rights, Bailey has cited no cases that suggest Rule 61 is anything other than a procedural device. The single case Bailey cites to support his *ex post facto* claim, *Steigler v. Bd. of Parole,* 501 F.Supp. 1077 (D.Del.1980), involved a statutory change in the number of votes required for parole. Significantly, *Steigler* reasoned that the new law had the practical effect of increasing the prisoner's burden of proof and reduced the likelihood of his release. *Id.* at 1080. Rule 61, in contrast, does not affect Bailey's burden of proof and in no other way unfairly impedes his right to post-conviction relief.

This Court, for example, has already determined as a policy matter that application of Rule 61 to criminal defendants convicted before the Rule became effective does not violate due process and unfairly affect a prisoner's right to collateral review. *See Boyer v. State,* Del.Supr., 562 A.2d 1186, 1187–88 (1989); *Bagwell v. State,* Del. Supr., 586 A.2d 1201 (1991) (ORDER). We reasoned in *Boyer* that the fifteen month period between the adoption of Rule 61 on September 17, 1987, and its effective date on January 1, 1989, gave adequate notice to any criminal defendant contemplating filing a post-conviction relief petition under the old version of Rule 35(a). *Id.* at 1188. This reasoning arguably is not applicable to Bailey because he is asserting a claim for relief based on a United States Supreme Court decision rendered after January 1, 1989. In our opinion, this fact alone does not permit an unlimited review of criminal convictions, which occurred before 1987, premised on claims arising from "new" Supreme Court pronouncements issued after January 1, 1989. *See, e.g., Flamer v. State,* Del.Supr., 585 A.2d 736, 748–49 (1990).

Rule 61 itself militates in favor of this important policy judgment. As we recognized in *Boyer,* the Rule 61 time bar is not an *absolute* prohibition to post-conviction relief petitions filed three years after conviction. 562 A.2d at 1188. Rather, a criminal defendant can still seek relief under Rule 61(i)(5), to present a "colorable claim

that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity, or fairness of the proceedings leading to the judgment of conviction." Accordingly, the Superior Court properly considered Bailey's post-conviction application under Rule 61.

### B.

■ We turn to the merits of the trial court's dismissal of Bailey's application. Bailey claims that the Superior Court improperly dismissed his petition as untimely under Rule 61(i)(1).[2] He alleges, without supporting arguments, that the United States Supreme Court announced a new retroactive right when it issued *Perry* on January 10, 1989. Thus, Bailey argues that his claim was not procedurally barred under 61(i)(1) because he filed his petition within three years of the *Perry* ruling. Bailey also argues, in the alternative, that even if his claim is barred under Rule 61(i)(1), the Superior Court erred in not properly considering the merits of his application under the procedural default provisions of Rule 61(i)(5).[3]

The State, in turn, contends that Bailey's claim is barred on purely procedural grounds. The State argues that Bailey's claim to relief under *Perry* presents nothing new and should be barred under Rule 61(i)(4). The State concludes that Bailey's *Geders* claim was previously decided, and reconsideration of his petition is unnecessary in the "interests of justice." *See* Super.Ct.Crim.R. 61(i)(4).[4]

The State argues that the 61(i)(4) exception is narrower than the "miscarriage of justice" standard of 61(i)(5), which applies to claims for relief under Rule 61(i). According to the State, we are not required to review the other bars to relief because this case clearly involves a former adjudication in which there is a strong interest in finality. The State contends that the only exceptions to this rule of finality under 61(i)(4) should be cases where the court lacked authority to convict a defendant. Thus, the State concludes, new legal rulings should have no effect on former adjudications unless they affected the court's "jurisdiction."

■ We find that the Superior Court properly rejected Bailey's claim on procedural grounds pursuant to Rule 61(i)(1). We disagree, however, with the methodology of the trial court in reaching this result. We also find that Bailey's claim does not meet the requirements of Rule 61(i)(5). Accordingly, it is unnecessary to address the State's arguments concerning the applicability of Rule 61(i)(4).[5]

---

**2.** Superior Court Criminal Rule 61(i)(1) provides:

> (i) **Bars to Relief.**
> (1) **Time Limitation.** A motion for post-conviction relief may not be filed more than three years after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than three years after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.

**3.** Superior Court Criminal Rule 61(i)(5) provides:

> (5) **Bars Inapplicable.** The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the Court lacked jurisdiction or to a *colorable claim that there was a miscarriage of justice because of a constitutional violation* that undermined the fundamental legality, reliability, integrity, or fairness of the proceedings leading to the judgment of conviction. (Emphasis added).

**4.** Superior Court Criminal Rule 61(i)(4) provides:

> (4) **Former Adjudication.** Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, *unless reconsideration of the claim is warranted in the interest of justice.* (Emphasis added).

**5.** In our opinion, the State's interpretation of the phrase "in the interest of justice," as expressed in Rule 61(i)(4), is too narrow. We recently suggested in *Flamer* that a prisoner proving that a newly created retroactive constitutional right, meeting the standards of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334, *reh'g denied*, 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989), applied to a conviction occurring before the new right became applicable, could satisfy the "interest of justice" standard of Rule 61(i)(4). *See* 585 A.2d at 749–50. We stated in *Flamer* that the "inter-

### III.

■ We start with Bailey's claim for relief under Rule 61(i)(1). The trial court first concluded that Bailey's claim was barred under Rule 61(i)(1) because he filed his petition more than three years after his conviction became final. *See Bailey*, Letter op. at 2. The court then addressed the merits of Bailey's petition, presumably under the "miscarriage of justice" provision of Rule 61(i)(5). *Id.* However, the trial court also appeared to consider, within its Rule 61(i)(5) analysis, Bailey's claim that his petition should be scrutinized under the Rule 61(i)(4) "interest of justice" standard. *Id.*[6] After assessing the merits of Bailey's claim, the court rejected his argument that *Perry* mandated a reversal of the original conviction, concluding that the petition was time barred. *Id.* at 3. In our view, the trial court erroneously applied Rule 61(i)(1) to Bailey's petition. The court should not have addressed the merits of Bailey's claim before first fully determining whether his arguments were procedurally barred.

### A.

The first inquiry in any analysis of a post-conviction relief claim is whether the petition meets the procedural requirements of Rule 61. *See Flamer*, 585 A.2d at 747; *Younger v. State*, Del.Supr., 580 A.2d 552, 554 (1990). Rule 61(i)(1) provides, in part, that a post-conviction relief petition is barred unless it is filed within three years after a "judgment of conviction is final." The Rule also provides that a petition "assert[ing] a retroactively applicable right that is newly recognized after the judgment of conviction is final" is not untimely if filed within three years "after the right is first recognized by ... the United States Supreme Court." Bailey contends that his petition is not untimely because it asserts a so-called new "retroactively applicable right."

In *Flamer*, we announced a general rule barring retroactive application of new decisions to cases on collateral review. 585 A.2d at 749. Instead, we found that a court considering an application for post-conviction relief should only apply "the constitutional standards that prevailed at the time the original proceedings took place." *Id.* We held that a general bar to retroactivity was necessary to ensure the finality of convictions, which is an integral part of the deterrent effect of the criminal justice system. *Id.* We also held in *Flamer* that this Court would not enforce its general ban against retroactivity in every instance. *Id.* Rather, we found that any post-conviction relief petition meeting the standards of *Teague* was not necessarily barred. *Id.*

■ A plurality of the United States Supreme Court announced in *Teague*, that as an initial matter, a criminal appellant could not assert an argument based on a new decision in a post-conviction relief petition unless that decision was a "new rule" meant to apply retroactively. 489 U.S. at 288, 109 S.Ct. at 1070. In view of our holding in *Flamer*, we cannot ignore the specific language of our own Rule 61(i)(1) which permits a criminal defendant to file a post-conviction relief petition within three years after the Court announces a newly recognized retroactive "right." Thus, we consider that in following *Teague*, as an exception to the general ban against retroactive application of new decisions to cases pending a collateral appeal, *Flamer* is equally applicable to the procedural time bar provision of Rule 61(i)(1).[7] Accordingly, a decision does not introduce a new retroactive *"right"* under Rule 61(i)(1) un-

---

est of justice" provision of Rule 61(i)(4) requires a movant to prove in a post-conviction petition that the new legal development "revealed that the trial court lacked the authority to convict or punish" the defendant. 585 A.2d at 746. We consider that the term "authority" includes not only the concept of jurisdiction, but also encompasses any constitutional error meeting the two-part test of *Teague.*

**6.** We underscore that the terms "interest of justice" and "miscarriage of justice" have different and distinct meanings under Rule 61. The trial court committed error if it treated the two rules conterminously.

**7.** We foreshadowed today's conclusion in *Younger*, where we implicitly found that the *Teague* "new rule" test applied to our own Rule 61(i)(1). *See* 580 A.2d at 554.

less it meets the standard set out in *Teague* for determining whether a ruling announces a retroactively applicable *"rule."* *See Flamer*, 585 A.2d at 749; *Younger*, 580 A.2d at 554.

The *Teague* plurality established a basic, though imprecise, test for determining whether a case created a new retroactive rule. The majority found that in general, "a case announces a new rule when it breaks new ground or imposes a new obligation on the states or the Federal Government." 489 U.S. at 288, 109 S.Ct. at 1070. The *Teague* plurality explained that "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* (emphasis in original). Justice Harlan, writing in a separate opinion rendered many years prior to *Teague*, recognized the subtle difficulty in determining, not whether an opinion breached "new ground," but rather, whether it created a new rule or merely " 'applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law.' " *Mackey v. U.S.*, 401 U.S. 667, 695, 91 S.Ct. 1160, 1181, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part) (quotation omitted) (expressing a strong interest in finality of criminal proceedings and urging limited habeas corpus review of new collateral attacks).

The Supreme Court of the United States has recently embraced Justice Harlan's admonition and has adopted an expansive view of the "new rule" doctrine in the few cases decided after *Teague*. *See Preface: 19th Annual Review of Criminal Procedure: United States Supreme Court and Courts*, 78 Geo.L.J. i, xix (1990) (written by Brennan, J.). *But see Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989) (finding no "new rule" where outcome of new precedent did not "impose new obligation" and result dictated by precedent). For example, in *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347, *reh'g denied*, —— U.S. ——, 110 S.Ct. 1941, 109 L.Ed.2d 304 (1990), the Court found that a new decision can announce a new rule even if the author

of the opinion states that a prior decision "controlled" the outcome. *Id.* at ——, 110 S.Ct. at 1217. The Court found that a decision creates a new rule if the outcome of the case was "susceptible to debate among reasonable minds" because other courts used the so-called "controlling" precedent to reach a different ultimate result. *Id.*

Similarly, the Court, in *Saffle v. Parks*, cautioned that the meaning of a "new rule" under *Teague* was inextricably linked to the pragmatic purpose of limiting collateral review to preserve the integrity of the final decisions of state courts in criminal cases. 494 U.S. 484, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415, *reh'g denied*, —— U.S. ——, 110 S.Ct. 1960, 109 L.Ed.2d 322 (1990). The Court therefore found in *Saffle* that a decision does not create a new rule if the court reviewing the habeas petition concludes that a state court, considering the same petition at the time the original conviction became final, would "have felt compelled by [then] existing precedent to conclude that the rule [petitioner] seeks was required by the constitution." *Id.*

In *Younger*, a decision rendered after the *Butler* and *Saffle* cases, this Court took a somewhat less expansive view of the meaning of a "new rule." We held in *Younger* that a case decided after the defendant's conviction becomes final does not create a new rule when it merely clarifies a previous decision. 580 A.2d at 554. We also found in *Younger* that the subsequent decision does not create a new rule when it merely "applies principles which governed the earlier" decision. *Id.* We reiterated this point in *Flamer*, finding that "the general rule of non-retroactivity" does not apply "to cases announcing rules which are merely an application of the principle that governs a prior case decided before a defendant's trial took place." 585 A.2d at 749.

In view of Justice Harlan's admonition in *Mackey* and the current evolution of the *Teague* "new rule" doctrine, we decline to adopt a formal static test for determining the meaning of a "new rule" for purposes of our own state collateral relief provisions.

Nonetheless, a study of Bailey's claim indicates that he does not assert a new retroactive rule under any circumstances. Thus, his petition is procedurally barred under Rule 61(i)(1).

### B.

The United States Supreme Court decision in *Perry*, as applied to Bailey's post-conviction relief petition, does . not announce a new rule under any of the previously recognized tests. *Perry* found that a criminal defendant did not have an absolute right to consult with his lawyer under the Sixth Amendment during a fifteen minute recess at the conclusion of his direct testimony. 488 U.S. 272, 284–85, 109 S.Ct. 594, 602, 102 L.Ed.2d 624 (1990). Significantly, *Perry* rejected the reasoning which the U.S. Court of Appeals for the Fourth Circuit had earlier employed in that case.

The Fourth Circuit suggested that the defendant was deprived of his Sixth Amendment rights when the trial court prevented him from speaking with his lawyer. *See Perry v. Leeke*, 832 F.2d 837, 840 (4th Cir.1987). It nonetheless found that the error was harmless. The court applied the prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), to the error and concluded that the evidence against the defendant was "overwhelming" and that his testimony would have been no different if he was permitted to consult with his lawyer. *See Perry*, 832 F.2d at 843.

The Supreme Court held in *Perry* that it was error to apply the *Strickland* prejudice analysis. According to *Perry*, such an inquiry is inappropriate where the defendant proves that the trial court totally deprived him of his Sixth Amendment rights. Therefore, the Supreme Court noted in *Perr* that its citation to *Geders* in *Strickland* "was intended to make clear that [complete denial of counsel] is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has

been constitutionally ineffective." 488 U.S. at 280, 109 S.Ct. at 600 (citations omitted).

Significantly, *Perry* did not clarify or expand any aspect of its prejudice analysis in *Geders*. *Perry* did not hold that *Geders* applied regardless of whether the defendant made some showing that he was actually prevented from communicating with his lawyer during a long recess. The Court's citation to *Geders* in *Perry* is, therefore, at least not inconsistent with the disposition of Bailey's original habeas corpus petition under *Geders*. *See Bailey II*, 422 A.2d 956; *Bailey v. Redman*, 657 F.2d 21, 24 (3d Cir.1981). The Third Circuit noted that Bailey did not need to show the same type of prejudice required in *Strickland*. It did, however, require him to "demonstrate that he wanted to meet with counsel, but was prevented from doing so by the Court's instruction." *See Bailey*, 657 F.2d at 24. Bailey's proof has consistently failed to meet the Third Circuit's test.

*Perry* has had little or no impact on this Court's original interpretation of *Geders* since our first denial of Bailey's post-conviction relief petition in 1980. Thus, we conclude that *Perry* would not have changed our analysis of *Geders* even under the "liberal" *Saffle* test had *Perry* been the applicable law at the time Bailey's conviction became final. *See Saffle*, 494 U.S. at ——, 110 S.Ct. at 1260. Accordingly, Bailey's petition does not raise a "new retroactively applicable right." His claim is procedurally barred under Rule 61(i)(1).

### IV.

■ We find no basis for relief after also considering Bailey's alternate claim that the trial court erred in denying his petition under Rule 61(i)(5). Rule 61(i)(5) is a general default provision, and permits a petitioner to seek relief if he or she was otherwise procedurally barred under Rules 61(i)(1)–(3). A defendant must prove that his or her claim shows either that the Court lacked jurisdiction or that the petition raises "a colorable claim that there was a miscarriage of justice *because of a constitutional violation* that undermined the fundamental legality, reliability, integrity,

or fairness leading to the judgment of conviction." Super.Ct.Crim.R. 61(i)(5) (emphasis added). The defendant bears the burden of proving the existence of a constitutional violation under the Rule. *See Younger,* 580 A.2d at 555.

Bailey's petition clearly does not meet the requirements of Rule 61(i)(5). We held in *Younger* that the "fundamental fairness exception" is extremely narrow and is only applicable "in limited circumstances, such as when the right relied upon has been recognized for the first time after the direct appeal." 580 A.2d at 555. We have already found that *Perry* did not create a newly recognized constitutional right. *See supra* Part II. B. Nonetheless, a brief review of Bailey's reliance on *Perry* is necessary to determine whether his petition makes an otherwise colorable showing of a constitutional violation.

Bailey's petition is factually distinguishable from *Perry,* which raised a constitutional claim. Counsel for the accused in *Perry* made a timely objection to the trial court's instruction *banning all* communication between the defendant and his lawyer during a fifteen minute recess in defendant's direct examination. 488 U.S. at 273, 109 S.Ct. at 596. In contrast, Bailey did not object to the Superior Court's instruction which only banned communication between Bailey and his counsel concerning his *testimony* on cross-examination during the overnight recess. Moreover, there was no indication in the record that Bailey's lawyer attempted or even intended to confer with Bailey during the recess. The record also does not reveal any contemporaneous evidence that Bailey sought his counsel's advice during the overnight recess. Thus, Bailey's bald and uncorroborated statement, that he believed the trial court's instruction prevented him from obtaining legal advice, and that he would have liked to have talked with his lawyer, represents a belated *ad hoc* attempt to relitigate an issue this Court and the federal courts settled over a decade ago.

Under the circumstances, Bailey's petition *does* not merit consideration under Rule 61(i)(5). Accordingly, the Superior Court's order denying post-conviction relief is,

AFFIRMED.