IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LARRY MORRIS, | § | |
| | § | No. 284, 2016 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 1312002629 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: December 14, 2016
Decided: December 28, 2016

Before **HOLLAND**, **VAUGHN**, and **SEITZ**, Justices.

# <u>ORDER</u>

This 28th day of December, 2016, having considered the briefs and the record below, it appears to the Court that:

(1)    During a custody hearing in Family Court, Larry Morris' daughter ("KM") testified that Morris sexually assaulted her several times. The Division of Family Services contacted the Delaware State Police to investigate the allegations. The police interviewed KM twice and recorded her statements. On both occasions, KM told police that her father had digitally penetrated her vagina and forced her to masturbate him between ten and twenty times. She was twelve years old at the time of the attacks. During KM's second interview, the State's audio recording

malfunctioned. The interviewing officer, however, summarized both interviews in a report. The police also interviewed Morris. Morris waived his *Miranda* rights and confessed to abusing his daughter. Police arrested Morris and charged him with multiple counts of sexual abuse of a child by a person of trust, authority or supervision, continuous sexual abuse of a child, and related offenses.

(2) The State soon began plea negotiations with Morris. Morris' counsel e-mailed the prosecutor and said that Morris did not want to go to trial because he did not want to "put his daughter through all that."[1] Counsel also said Morris would likely be amenable to a plea if the State offered ten years of incarceration or less. On May 23, 2014, Morris pled guilty to one count of sexual abuse of a child by a person in position of trust, authority or supervision in the first degree, and no contest to one count of continuous sexual abuse of a child. After an extensive plea colloquy, the Superior Court found that Morris' plea was knowing, intelligent, and voluntary.

(3) On July 22, 2014, the Superior Court sentenced Morris to a total of thirty years at Level V incarceration, suspended after fifteen years and successful completion of the Transitions Sexual Offender Program, for six months Level IV work release, followed by two years at Level III probation. He did not appeal.

---

[1] App. to Opening Br. at 21.

(4) On June 29, 2015, Morris moved for postconviction relief, alleging three instances of ineffective assistance of counsel. First, Morris claimed that counsel violated the attorney-client privilege by e-mailing the prosecutor and telling the prosecutor that Morris might be willing to take a plea deal to spare his daughter the trauma of a trial. He also argued that counsel was ineffective for failing to demand that the State explain why it "lost" the audio recording of KM's second interview. Finally, Morris claimed that counsel incorrectly informed him that he was facing a mandatory minimum of twenty-five years.

(5) On May 12, 2016, after a hearing, the Superior Court denied Morris' motion. The court found that sending the e-mail with information about what Morris might accept in a plea deal and why did not violate the attorney-client privilege or prejudice Morris because counsel was acting in Morris' best interest by trying to negotiate a favorable plea. The Superior Court also determined that the State did not lose KM's interview. Rather, the audio recording equipment failed during the interview. Finally, the court held that counsel properly advised him about the potential penalties he was facing before he accepted the plea. This appeal followed.

(6) Morris raises two issues on appeal. First, he claims counsel was constitutionally ineffective for disclosing during settlement negotiations Morris' unwillingness to go to trial. Second, he claims counsel was ineffective for failing

to investigate the victim's "lost" recorded statement. We review the Superior Court's denial of a motion for postconviction relief for abuse of discretion.[2] We review legal and constitutional questions *de novo*.[3]

(7)  Before addressing the merits of Morris' claim, this Court must determine that he met the procedural requirements of Rule 61.[4] A motion for postconviction relief is procedurally barred if it is untimely, repetitive, procedurally defaulted, or if the issue was formerly adjudicated.[5] This was Morris' first claim for postconviction relief, and it was timely filed and not otherwise defaulted. Thus, we consider his motion on its merits.

(8)  To succeed on an ineffective assistance of counsel claim, Morris must show: (1) counsel's representation fell below an objective standard of reasonableness, and (2) prejudice.[6] "To show prejudice, the defendant must show that the proceeding's outcome would have been different had counsel not committed the challenged errors."[7] There is a strong presumption that counsel's representation was professionally reasonable.[8]

---

[2] *Neal v. State*, 80 A.3d 935, 941 (Del. 2013).
[3] *Brooks v. State*, 40 A.3d 346, 353 (Del. 2012).
[4] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991).
[5] Super. Ct. Crim. R. 61(i).
[6] *Neal*, 80 A.3d at 941 (internal quotations omitted); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[7] *Brooks*, 40 A.3d at 353.
[8] *Id.*

4

(9) Morris first claims counsel violated the attorney-client privilege when he told the prosecutor that Morris did not want to put his daughter through trial, and thus would be open to a plea deal. Under Delaware Rule of Evidence 502, a confidential communication between a client and his attorney made for the purpose of seeking legal advice is protected by the attorney-client privilege.

(10) As the Superior Court correctly held, the statement that Morris might be amenable to a plea deal to spare his daughter further trauma was already known to the State and thus would not be privileged. As the Superior Court held, Morris had already told the State that "he did not want to face his daughter ever again, that whatever she said was right, and that he loves her and he wanted the officer to let her know he still loved her."[9] Further, Morris suffered no prejudice by counsel's action—on the contrary, Morris received an extremely favorable plea agreement as a result of counsel's plea negotiation efforts. The State could have insisted on prosecuting Morris with a crime carrying a minimum mandatory sentence of twenty-five years.[10] The State also had ample evidence to convict him, including his own confession. But the State agreed to remove KM's age from the charges in exchange for his plea, reducing the mandatory minimum sentence from twenty-five years to twelve years. Far from being ineffective, counsel secured an extremely favorable plea agreement for Morris.

---

[9] Opening Br. Ex. A.
[10] *See* 11 *Del. C.* § 4205A.

5

(11) Next, Morris argues that his counsel was ineffective for failing to demand proof of what caused the recording equipment to malfunction during one of two recorded interviews with KM. According to Morris, because the tape could have potentially included exculpatory information, counsel was ineffective for failing to move to suppress all of the videos in accordance with *Deberry v. State*.[11]

(12) "The obligation to preserve evidence is rooted in the Fourteenth Amendment to the United States Constitution and Article 1, Sec. 7 of the Delaware Constitution."[12] In *Deberry v. State*, this Court held that the State has a duty not just to disclose, but also to preserve exculpatory evidence. This case, however, differs materially from *Deberry*. *Deberry* involved law enforcement's failure to preserve evidence that was once within its possession. Here, as the Superior Court correctly found, the State did not lose or destroy any evidence. Rather, it is undisputed that the audio recording equipment malfunctioned. The video was available, but the sound did not work. Further, there is no evidence that the statement could have been favorable to Morris. Although the audio malfunctioned, the police summarized both of the victim's interviews in his police report.[13] The

---

[11] 457 A.2d 744, 752 (Del. 1983).
[12] *Hunter v. State*, 55 A.3d 360, 368 (Del. 2012).
[13] App. to Answering Br. at 18.

6

summary shows that the victim's statement would have been incriminating, not exculpatory. Therefore, *Deberry* is inapplicable.[14]

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[14] *Warren v. State*, 625 A.2d 280, 1993 WL 132986, at *2-3 (Del. April 8, 1993) (audio recorded statement was not exculpatory and thus not a *Deberry* violation).

7