# GOVERNMENT OF THE VIRGIN ISLANDS ex rel. ANGENETTE SUAREZ, Petitioner

## v.

## GEORGE SUAREZ, Respondent

Family No. S15/1982

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

February 16, 1988

ANDREA L. SMITH, ESQ., Assistant Attorney General, St. Croix, V.I., *for petitioner*

RENEE D. DOWLING, ESQ., St. Croix, V.I., *for respondent*

ELTMAN, *Judge*

## MEMORANDUM OPINION

The Court is asked to rule on the retroactivity of 16 V.I.C. § 367(a), a 1986 amendment to Title 16 (Act #5249). At issue in this case is the propriety of a writ of execution which was the basis for seizing $20,000.00 in the respondent's bank account. Because the writ was properly issued under § 367(a), the respondent's motion to quash will be denied.

## FACTS

On October 2, 1979, the parties were divorced and George Suarez was ordered to pay $400.00 per month in child support and $400.00 per month in alimony. Over the years his failure to comply with the order has been the subject of four separate contempt proceedings.

In the latest episode, the Government, on October 7, 1987, requested the Clerk of the Court to issue a writ of execution against the respondent's property, in order to secure the sum of $39,332.21. This amount represents monies respondent has failed to pay pursuant to child support orders entered on May 10, 1982, June 14, 1984 and December 18, 1984. The Government based its request on 16 V.I.C. § 367(a),[1] which apparently became effective on January 6, 1987, and certainly after the entry of the support orders in this matter. In reliance upon 367(a), the Government attached Suarez' property without first moving to reduce the arrearages to a final judgment. The Clerk issued the writ and the Territorial Marshal seized $20,000.00 which the respondent had in an account in a St. Croix branch of Banco Popular de Puerto Rico.

At a contempt hearing held on November 13, 1987, the respondent moved to quash the writ and to have the $20,000.00 returned to him. He claims that since § 367(a) is not explicitly made retroactive,

---

[1] § 367 Child support payments as final judgments; prohibition against retroactive modification

(a) Any payment or installment of support under any child support order, whether pursuant to a court order or pursuant to an order entered by a hearing officer, shall be a final judgment by operation of law, with the full force and effect of a judgment of the courts of the Virgin Islands, including the ability to be enforced, on and after the date on which the child support payment installment is due.

it cannot apply to a pre-1987 support order. He also contends that the retroactive application of § 367(a) denied him his constitutional right to due process. Specifically, he claims that he was entitled to prior notice of the writ of execution. The Government asserts that § 367(a) means that every child support order, including one entered before the effective date of the amendment, has the effect of a final judgment as of the date the child support payment is due and that a writ of execution may issue, without prior notice, solely upon a determination of arrearages on a child support order.

## DISCUSSION

Determining the propriety of the writ of execution in this case involves several questions. First, does 16 V.I.C. § 367(a), pursuant to which the writ was issued, violate the respondent's right to protection from ex post facto legislation? Second, if § 367(a) is not an ex post facto law, may it be applied to a child support obligation which began prior to the effective date of the statute? Third, if § 367(a) may not be retroactively applied, does the writ of execution amount to a retroactive and therefore invalid application of the statute?

### I. *Ex Post Facto*

■ The U.S. Constitution, Art. I § 9, cl. 3 and the Revised Organic Act of 1954, § 3, cl. 9 prohibit the passage of an ex post facto law, generally defined as "one that imposes punishment for an act not considered to be criminal at the time it was committed." Government of the Virgin Islands v. Civil, 16 V.I. 77, 82, 591 F.2d 255 (3d Cir. 1979); Dobbert v. Florida, 432 U.S. 282 (1977); Geraghty v. United States Parole Commission, 579 F.2d 238 (3d Cir. 1978); Forman v. McCall, 709 F.2d 852 (3d Cir. 1983).

■■ The ex post facto proscription may also apply to legislation which is nominally civil if it is so penal in purpose or effect as to negate the legislature's choice of label, United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984), or where civil disabilities disguise criminal penalties. Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966 (2d Cir. 1985). "The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts." DeVeau v. Braisted, 363 U.S. 144, 80 S. Ct. 1146, 1154, 4 L. Ed 2d 1109 (1960) (plurality opinion of Frankfurter, J.).

6

■ There is no ex post facto violation, however, even where a statute is criminal or penal in nature, if the change in the law is merely procedural. Miller v. Florida, 482 U.S. 423, 107 S. Ct. 2446 (1987). Whether or not a law operates to a defendant's detriment, the ex post facto doctrine does not restrict legislative control of remedies and modes of procedure which do not affect substantive matters. Dobbert v. Florida, supra. Therefore, no ex post facto violation occurs if the change in the law is procedural and does not increase the penalty or change the elements of the offense or the ultimate facts necessary to establish guilt in a criminal case. Hopt v. Utah, 110 U.S. 574, 4 S. Ct. 202, 28 L. Ed 262 (1884), cited in Miller v. Florida, supra at 2452. In a civil context, a legislative change which increases the potential amount of damages which a party may be required to pay is not unconstitutional where the amendment does not impose an additional duty nor impair a vested right. 745 F.2d 1297 (10th Cir. 1984), cert. denied, 467 U.S. 1206, 104 S. Ct. 2390 (1984).

Although Virgin Islands law provides for criminal liability for nonsupport of dependents, 16 V.I.C. §§ 371–374, the statute under which Government is proceeding in this instance is specifically a civil provision, and, while not dispositive in and of itself, the choice of label is relevant in an ex post facto analysis. United States v. One Assortment of 89 Firearms, supra. Moreover, the legislative history of the statute demonstrates a remedial as opposed to a penal or punitive nature.

Sec. 367 is a result of the federal government's effort to eliminate the disparity among states regarding the modification of child support arrearages. As a prerequisite for continued federal funding of IV-D agencies, i.e. those administering the Aid For Dependent Children program, § 9103 of Pub. L. 99–509 required that the states enact laws providing that any payment or installment on a child support order is a judgment, on and after the date each payment is due. 13 Family Law Reporter 1600 (October 13, 1987). Therefore, § 367(a) was enacted not as a punitive provision but clearly to remedy what was perceived to be a problem of retroactive modifications of child support order. There is nothing punitive about it; no fine or additional obligation is imposed. Rather, it simply provides a greater degree of finality not only to a child support order but to payments to be made thereunder, and it eliminates the necessity for the obligee to return to court to convert the order to a judgment. Providing that a payment or installment

7

is a judgment does no more than to facilitate the enforcement of the order. The obligor is required to pay nothing more than he already knows he must.

 The respondent's support obligation is not altered by § 367, and the statute does not impose a fine, surcharge, interest penalty or any other form of punishment upon Suarez. Consequently, neither the statute nor its application here violates the ex post facto doctrine.

## II. *Retroactivity*

 A) A statute is presumed to be prospective only and will not be applied retroactively in the absence of clear legislative intent. United States v. Security Industrial Bank, 459 U.S. 70, 103 S. Ct. 407 (1982). However, where no such specific intent is found, a statute may be retrospectively applied if it is remedial in nature. Silverlight v. Huggins, 9 V.I. 123, aff'd, 10 V.I. 638, 488 F.2d 107 (3d Cir. 1973). The mere fact of retroactive application does not render it unconstitutional. United States v. Conservation Chemical Co., 619 F. Supp. 162 (D. Mo. 1985). Even where legislation impairs recognized rights, it will survive a constitutional challenge where it has a proper purpose, Prevost v. Hovic, ––– V.I. –––, 640 F. Supp. 1220, affirmed in part and remanded, Nieves v. Hovic, 819 F.2d 1237 (3d Cir. 1987).

In United States v. Security Industrial Bank, supra, upon which the respondent relies, the Supreme Court held that a lien avoidance provision of the bankruptcy law was not retroactive. However, in that case it was Congress' elimination of proposed explicit language rendering the statute retroactive which evidenced its intent that it only be prospectively applied.

 The presumption against retroactivity is overcome in this instance. Although § 367 is not specifically made retroactive, it is patently remedial legislation whose purpose is to facilitate the collection of support obligations or, in more rhetorical terms, to make it more likely that children receive the necessities of life from those who brought them into this world. A more compelling remedial purpose can hardly be imagined.

 B) Even if § 367 could not properly be considered retroactive, its application to this case nevertheless would be valid. Here, Suarez had a support obligation imposed on him prior to the enactment of § 367. Thereafter, he became delinquent in paying his

8

child support installments. Obviously, any installment or payment not made remains due and owing unless otherwise discharged, so that if, for example, Suarez owed $1000.00 before the enactment of § 367, he still owed it after the statute became effective. A child support arrearage must be considered as much a "payment or installment" for purposes of § 367 as is a monthly payment or installment which first becomes due after the passage of the statute. Both in terms of logic and the clear purpose of the law, § 367 relates to arrearages which existed as of the date of its enactment. Therefore, the total amount owed by Suarez under the October, 1979, child support order are to be considered as a final judgment by operation of law, subject to enforcement by way of a writ of execution.

### III. *Due Process*

Although the motion to quash the writ of execution will be denied, the respondent has raised a legitimate issue concerning his right to notice before being deprived of his property. He has focused on the wrong statute, however, 16 V.I.C. § 367, whereas the more general law in this jurisdiction, 5 V.I.C. § 471 et seq., may be vulnerable to a due process challenge. In Finberg v. Sullivan, 634 F.2d 50 (3d Cir. 1980), the Third Circuit held that Pennsylvania's postjudgment garnishment statute violated the due process and supremacy clauses of the U.S. Constitution, because the law did not permit an opportunity for a sufficiently prompt postseizure hearing, nor did it provide for notice to the judgment debtor of the exemption from garnishment, under federal law, of social security payments. As did the Fifth Circuit in Brown v. Liberty Loan Corp. of Duval, 539 F.2d 1355 (5th Cir. 1976), the Third Circuit in Finberg followed the analysis used by the Supreme Court in a line of prejudgment seizure cases[2] and found a constitutional dimension to the manner in which a judgment may be collected.

While 5 V.I.C. § 471 makes the enforcement of a judgment subject to the Federal Rules of Civil Procedure, neither the Federal Rules nor 5 V.I.C. §§ 472–474, which describe the enforcement mecha-

---

[2] Endicott-Johnson Corp. v. Encyclopedia Press, Inc., 266 U.S. 285, 45 S. Ct. 61, 69 L. Ed. 288 (1924); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S. Ct. 1820, 28 L. Ed. 2d 349 (1969); Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972); Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974); North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S. Ct. 719, 42 L. Ed. 2d 751 (1975).

nism, require any notice of a postjudgment seizure or of the right to claim exemptions from execution, or any procedure for setting aside a garnishment. There appears, then, to be a question as to whether 5 V.I.C. §§ 471–474 could withstand scrutiny in light of Finberg, supra.

To be sure, the equities in favor of the debtor in Finberg were compelling. She was an elderly woman with $600.00 in her bank account which a loan company had garnished in partial satisfaction of its judgment. Moreover, the Pennsylvania statute in question did not apply to support matters. In the instant case, the equities strongly disfavor Suarez, who not only has defaulted on years of child support payments but who also has attempted to deceive concerning his recent income. He has not argued that he is protected by any exemptions, whether social security or otherwise. He has not challenged the postjudgment enforcement statute, per se. Nevertheless, Suarez has objected to his impending loss of property on due process grounds which, if considered in a broader scope than he has cast it, necessarily would involve a review of the Third Circuit's teaching in Finberg, supra.

■ Under the circumstances, because a constitutional argument is not waived by a failure to raise it on the trial level, Government of the Virgin Islands v. Testamark, 528 F.2d 742 (3d Cir. 1976), and because the actual release to the petitioner of the moneys seized from the petitioner's bank account likely could not be recovered by Suarez in the future, the order denying his motion to quash the writ of execution will be stayed for ten (10) days to enable the respondent to pursue whatever other avenue of relief he might deem appropriate.

### ORDER

In accordance with the memorandum opinion of even date, it is hereby

ORDERED that the respondent's motion to quash the writ of execution herein dated November 19, 1987, is hereby DENIED, except that the effect of this order shall be stayed until February 25, 1988.