# GOVERNMENT OF THE VIRGIN ISLANDS, ex rel. PAULETTE DILLON, Petitioner,

## v.

# DAVID PEARCE, Respondent

Family No. S57/1991

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

September 30, 1994

ANGELA FURMAN-BROWN, ESQ., Assistant Attorney General, (Department of Justice), St. Thomas, V.I., *for Plaintiff*

MARSHALL A. BELL, ESQ., St. Thomas, V.I., *for Defendant*

MEYERS, JUDGE

## MEMORANDUM OPINION

This court is called upon to decide whether to enforce a child support order that has been in existence for almost twenty (20) years. This action was filed pursuant to Title 16 Virgin Islands Code Section 391 et seq., which is commonly known as the Uniform Reciprocal Enforcement of Support Act (hereinafter "URESA"). Based on the following reasons, the court will enforce the child support order.

### FACTS

Petitioner and Respondent were married on February 22, 1969. Two children were born to this marriage: Deric on September 16, 1969, and Dana on November 9, 1970. The parties were divorced on January 8, 1973. As part of the divorce decree, Respondent was ordered to pay child support in the amount of One Hundred Dollars ($100.00) per week. Respondent has never complied with the support order, because he claims that the parties entered into a verbal agreement, whereby Respondent would not pay the child support provided he never attempts to see his children again. Petitioner disputes the existence of such an agreement.

In June of 1991, approximately eighteen (18) years after the decree was entered, Petitioner instituted this URESA action. She alleges that her failure to file the action at an earlier time was due to Respondent's nomadic lifestyle. By that time, the parties' children had reached the age of majority: Deric was twenty-two (22) and Dana was twenty-one (21). According to the URESA petition, the outstanding child support due and owing to Petitioner is Seventy-Eight Thousand Two Hundred Eighty-One Dollars and Fifty-Eight

Cents ($78,281.58).[1] Respondent moved to dismiss this complaint based on the following theories: (1) there was a verbal agreement between the parties which cancelled his child support debt; and (2) the doctrine of laches bars this child support action.

## DISCUSSION

■ The purpose of URESA is to provide a uniform method of enforcement of duties of support. 16 V.I.C. Section 391. Under the provisions of the URESA, "it is the duty of the court of the responding state, upon receipt of the petition and certificate from the court of the initiating state, to determine whether the defendant has a duty to support the plaintiff, and their children, and if so to order such support." Lorillard v. Lorillard, 358 F. Supp. 172 (3d Cir. 1966), 5 VI 483. Once the responding state finds that there is such a duty, then that state is free to determine the amount of support that is now due and owing to the obligee. 16 V.I.C. Section 423. This court finds that there was a duty of support which was imposed by the 1973 court order.

A. *The Verbal Agreement*

■ Respondent contends that because he relied on the verbal agreement, he lost all benefits of being a father. A duty of child support, however, is owed to the child, not the parent; therefore, no parent can contract away his or her child's right to receive child support payments. Government of the Virgin Islands v. Stanwood, 21 V.I. 571 (Terr.Ct. 1985), Ciociola v. Ciociola, 302 So.2d 462 (Fla. 3d DCA 1976), Armour v. Allen, 377 So.2d 798 (Fla. 1st DCA 1979).

In Armour, the parties made a similar agreement, where the husband, Allen, would not be required to pay child support if he refrained from contacting the Plaintiff and from visiting his children. The court held that "child support is a right which belongs to the child, and is not a requirement imposed by one parent on the other, but rather is a dual obligation imposed on parents by the state." Id. While the existence of such an agreement may be a relevant factor

---

[1] The amount was calculated by the URESA Interstate Unit of Florida, the initiating state, and represents child support due and owing from January 8, 1973 until November 9, 1988, plus URESA fees. From September 1986, the amount accuring monthly was reduced by one-half to reflect Deric's emancipation. Similarly, the closing date coincides with Dana's emancipation.

in determining whether the Respondent's failure to pay was willful, it does not in any way affect the obligation of child support. Id.

■ Thus, the law is clear that the existence of such agreement does not constitute a valid defense to his non-payment, since such agreement would be void as against public policy. Napoleon v. Napoleon, 585 P.2d 1270 (Hawaii 1978), Morgan v. Morgan, 156 So.2d 147 (Ala. 1963). In addition, such agreement is in direct contradiction to the 1973 court order, possibly subjecting both parties to contempt charges. Such an agreement cannot stand.

B. *The Doctrine of Laches*

■ Respondent contends that Petitioner's claim for child support arrearages is barred by the doctrine of laches. Laches is an equitable doctrine which bars a claim if a Plaintiff in equity has failed to exercise due diligence in prosecuting the claim to the detriment of the other party, Watlington v. Canton, 18 V.I. 203, 208 (Terr Ct. 1982). The court, however, must find the presence of extraordinary facts or strong compelling circumstances to justify the imposition of this equitable doctrine. Allen, supra.

Watlington involved the enforcement of a child support order which was in existence for twelve (12) years. Canton, the father, sought to impose the doctrine of laches as a bar to the action. He claimed that had Watlington pressed him for the child support payments, he would not have added three (3) more children to his responsibilities and he would have sought a job paying a higher salary. Watlington claimed that Canton had not been materially prejudiced.

The parties had an agreement whereby Canton would convey his one-half interest in the marital abode in lieu of child support payments. This, Watlington explained, was the reason for her failure to enforce the child support order. In 1977, however, Canton approached Watlington's attorney regarding the possibility of having Watlington transfer her one-half interest in the marital abode to Canton so that he may use it as collateral in his business venture. Watlington did not seek to enforce the child support order until 1981.

The court found that prior to 1977, Watlington had an acceptable reason for not enforcing the court order; however, after discovering that Canton was not going to keep his part of the bargain, Watlington waited another five (5) years before seeking to enforce the

support order. Due to an unacceptable reason for this delay, the court imposed laches as a bar to that portion of the child support arrearages which represented her five (5) years of unexplained inaction.

In the case sub judice, Respondent only claims that he has lost all benefits of being a father. He then attempts to shift the burden of proof onto the Plaintiff by claiming that Petitioner has failed to provide any evidence or justification for failing to timely enforce the 1973 child support order.

Petitioner instituted this URESA action eighteen (18) years after the child support order was entered. She alleges that her failure to file such action earlier was due to Respondent's nomadic lifestyle. Respondent has not supplied the court with any evidence to the contrary. He has not proven that he has maintained the same address for a sufficient period of time for any court to acquire personal jurisdiction over him. While it seems that Respondent has tried to run away from his child support obligation, he now must learn that he cannot hide forever. Respondent's claim that he has lost all benefits of being a father could not have been too detrimental, especially since Respondent, by his own admission, voluntarily relinquished these benefits so that he would not be financially obligated to his children. Respondent cannot now use this same argument to convince the court that the doctrine of laches should apply as a bar to this action.

In Jackman v. Pelusi, 550 A.2d 199 (Pa. Super. 1988), the court refused to impose the doctrine of laches to bar the wife's claim for child support payments. Jackman, the wife, concluded that enforcement of the support order at an earlier time would have been futile, due to Defendant's financial situation. Thus, her renewal of enforcement coincided with her ex-husband's financial stability. The court found that the delay did in fact work in the husband's favor and that the "husband had [the] advantage of the time value of the money he should have paid out in child support over the [years] ...." Id. at 203.

Similarly, the court finds that Respondent is in a better financial position today, than he has ever been, to fulfill his child support obligations. He is the owner of several successful businesses and now has the ability to satisfy his child support obligations.

This court has determined that Petitioner timely filed her URESA action shortly before the twenty-year (20) statute of limita-

tions had expired. 5 V.I.C. Section 31(1)(B). In addition, the court finds no evidence of extraordinary facts or strong compelling circumstances that would give rise to the defense of the doctrine of laches.

## CONCLUSION

No parent can contract away his or her child's right to receive child support payments. The agreement, if any existed, as testified to by Respondent, was void as against public policy. Furthermore, Respondent's defense of laches must fail. Accordingly, the court finds and concludes that Respondent is liable to Petitioner for child support arrearages.

## JUDGMENT

In accordance with the Memorandum Opinion of even date, it is ORDERED, ADJUDGED and DECREED that the Respondent, David Pearce, shall pay to the Petitioner the sum of SEVENTY-EIGHT THOUSAND TWO HUNDRED EIGHTY-ONE DOLLARS AND FIFTY-EIGHT CENTS ($78,281.58) as and for child support arrearages; and it is further

ORDERED that copies of this Order shall be directed to Angela Furman-Brown, Esq., and Marshall Bell, Esq.