**SUSAN L. MORTON, Plaintiff,**

**v.**

**GEORGE L. MORTON, Defendant.**

Family No. S157/1993

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

March 14, 1996

VERONICA J. HANDY, ESQ., (BORNN, BORNN & HANDY), St. Thomas, U.S.V. I., *for Plaintiff*

JUDITH L. BOURNE, ESQ., St. Thomas, U.S.V.I., *for Defendant*

DIASE, Judge

## MEMORANDUM OPINION

This Court is faced with several issues arising out of an attempt to enforce a child support order issued by a California court upon the parties' settlement agreement. First, it must determine whether it has subject matter jurisdiction. Second, it must address the procedure which a party must follow to enforce such an order in the Virgin Islands. And, third, it must decide whether a parent can

file an action to collect child support arrears for a child who has attained the age of majority.

For the following reasons, this Court concludes that it does have subject matter jurisdiction, as this common law action for the enforcement of such a foreign order is a civil matter, over which jurisdiction was conveyed to this Court by V. I. CODE ANN. tit. 4, § 76(a) and tit. 16, §§ 341-369. Additionally, this Court holds that a party has three methods by which to proceed when seeking to enforce a foreign child support award: by filing an action pursuant to the Uniform Reciprocal Enforcement of Support Act, 16 V.I.C. §§ 391-429; by filing an action pursuant to the Uniform Enforcement of Foreign Judgments Act, 5 V.I.C. §§ 551-558; or by filing a common law action to enforce the judgment, as the Plaintiff has done here. Where, as here, there is an alleged breach of an agreement which was incorporated into the child support order, the non-breaching party may still bring a suit to enforce the order or judgment. Lastly, this Court concludes that a parent who was awarded child support can institute an action to collect child support arrearages for a child who has attained the age of majority.

## FACTS

The Plaintiff, Susan Morton ("Mrs. Morton") and the Defendant, George Morton ("Mr. Morton") were married and had three children: Jessica Sinclair Morton, born on October 18, 1972; Alexa Sinclair Morton, born on August 17, 1976; and Lara Sinclair Morton, born on June 28, 1982. According to Mrs. Morton, the parties separated in 1986 and she subsequently filed a petition with the Superior Court of California, Los Angeles County.[1] On April 7, 1989, the Superior Court of California, County of Los Angeles, entered an Order on a settlement agreement reached by the parties at the time of trial, which provided that Mrs. Morton would have legal and physical custody of the children and Mr. Morton would pay child support.

Section 3 of the Order, pertaining to child support, is the critical section at issue. Subsection A specifically provides, in pertinent

---

[1] A copy of the petition was not filed with the Court, so the Court is unaware of what Mrs. Morton specifically sought in the petition.

part, that Mr. Morton shall pay to Mrs. Morton for the support of the minor children the sum of Six Hundred Sixty Six Dollars and 66/100 ($666.66) per month, per child, for a total of Two Thousand and 00/100 Dollars ($2,000.00) per month, payable one-half on the first day and one-half on the fifteenth day of each month, commencing on April 15, 1989, and continuing until the youngest child reaches majority, dies, marries, becomes self-supporting or emancipated. The Order also provided that child support is payable only for eleven months of each year. Additionally, subsection C, which is styled "special orders" regarding child support, provides that each party shall pay one-half of all medical, dental, orthodontic, and psychological expenses not covered by insurance, as well as expenses for music lessons and extra-curricular activities.

On October 20, 1993, Mrs. Morton filed a complaint in this Court to enforce a foreign judgment and for domestication of a foreign judgment, pursuant to 4 V.I.C. § 76 and 16 V.I.C. § 342 *et seq.* (sic). In support of her complaint, she later filed a certified copy of the Order. Mrs. Morton asserts that the Order is entitled to full faith and credit in the United States Virgin Islands pursuant to 16 V.I.C. § 368(b); that Mr. Morton was to make regular, monthly support payments beginning January, 1990; that the initial child support payments for the year 1989 were made from the sale of the marital home; that he made scheduled payments, though late, through June, 1990; that since June, 1990, she has made numerous written and oral requests to Mr. Morton for the payments due and owing; and that since June, 1990, Mr. Morton has only paid the sum of Two Thousand Five Hundred and 00/100 Dollars ($2,500.00) for child support and medical expenses.

Moreover, she asserts that, as of October 7, 1993, Mr. Morton was in arrears in the amount of Sixty Nine Thousand Five Hundred and 00/100 ($69,500.00) for his monthly child support obligation and Seven Thousand Four Hundred Fifty Two and 90/100 Dollars ($7,452.90) for the children's medical, dental, orthodontic, psychological, and miscellaneous other expenses. She seeks entry of a judgment in the sum of Seventy Seven Thousand Forty Two and 90/100 Dollars ($77,042.90) and she requests that the Court issue a writ of execution against his assets for the child support arrears to forestall him from hiding any assets. She further requests that the judgment be entered without a hearing, however.

After filing the complaint, Mrs. Morton personally served Mr. Morton with the complaint and summons through the use of a private process server. Subsequently, Mr. Morton filed a Motion to Dismiss the complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, attacking this Court's subject matter jurisdiction; the procedure Mrs. Morton has followed for the relief sought; and her right to seek the relief.

## DISCUSSION

Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure provide, in pertinent part, that "[e]very defense . . . to a claim for relief in any pleading . . ., shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter . . . [and] (6) failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(1) raises the objection that the court has no authority or competence to hear and decide the case. In making its decision, a court is compelled to construe the complaint broadly and liberally. 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (1990). For the purposes of a motion to dismiss under Rule 12(b)(6), the complaint is to be construed in a light most favorable to the plaintiff and its allegations are taken as true. The court must examine the allegations and determine if they constitute a statement of a claim under Rule 8(a) of the Federal Rules of Civil Procedure. *Pepper-Reed Co. v. McBro Planning & Development Co.*, 19 V.I. 534 (D.V.I. 1983).

For the following reasons, this Court concludes that it has subject matter jurisdiction over this matter and that Mrs. Morton has presented a colorable claim for which relief can be granted and will deny Mr. Morton's motion.

### A. Subject Matter Jurisdiction

At the onset, this Court must determine whether it has subject matter jurisdiction to consider this case. In her complaint, Mrs. Morton asserts that this Court has jurisdiction pursuant to 4 V.I.C. § 76, which is the general grant of jurisdiction, and 16 V.I.C. § 342 *et seq.* (sic), which provides for civil liability for support. Mr.

Morton, however, argues that 4 V.I.C. § 76 only grants the Territorial Court jurisdiction to make orders and decrees pertaining to the support of relations, but not to enforce foreign decrees. Additionally, he asserts that 16 V.I.C. §§ 341-369 restrict the Court to the threshold determination of the existence of a duty to provide child support and do not confer jurisdiction on this Court. This Court disagrees.

4 V.I.C. § 76(a) provides, in pertinent part, as follows:

[E]ffective October 1, 1991, the Territorial Court shall have *original jurisdiction in all civil actions* regardless of the amount in controversy; to supervise and administer estates and fiduciary relations; to appoint and supervise guardians and trustees; to hear and determine juvenile, divorce, annulment and separation proceedings; to grant adoptions and changes of name; to establish paternity; to legitimize children and to make orders and decrees pertaining to the support of relations.

(emphasis added).

In *In Re Application of Moorhead*, 27 V.I. 74, 85 (Terr. Ct. 1992), the Territorial Court defined "civil actions" as including "all types of actions, other than criminal proceedings, brought to enforce, redress, or protect private rights." Indeed, the Court further emphasized that the phrase "all civil actions" was "clear and unambiguous" and that it "accord[ed] to [it a] broad, general meaning." *Id.*

■ Thus, the enumeration of various civil actions in section 76(a) was not intended to be an exhaustive breakdown of all civil actions over which this Court has jurisdiction. The critical fact is that it provides for this Court's jurisdiction over all civil actions. This wording is self-explanatory and not preclusive.

■■ And, there is no doubt that this is a civil action. An action to recover on a foreign judgment has been previously recognized as a common law action to collect on a foreign debt or judgment. In *Babcok v. Gold*, 25 V.I. 325 (D.V.I. 1990), the plaintiff sought recovery on a money judgment entered by a Michigan court. The District Court found that the plaintiff's action was more properly

characterized as a common law action to collect on a foreign judgment or debt. Therefore, as the present action is civil in nature, essentially seeking to enforce and collect on a foreign support order, 4 V.I.C. § 76(a) confers jurisdiction.

Moreover, the applicability of 16 V.I.C. §§ 341-369 has already been established as to this proceeding and similar proceedings. In *Leonard v. Leonard*, 18 V.I. 248, 251 (Terr. Ct. 1982), the Court held as follows pursuant to these provisions:

> [A] court of the Virgin Islands is authorized to enforce any duty of support which a parent within this jurisdiction owes to a child, whether by virtue of local law or as validly declared by a foreign court having jurisdiction. Specifically, "duty of support" includes any duty of support imposed, or imposable by law, or by any court order, decree or judgment, whether interlocutory or final
> . . . .

### B. Enforcement of a Foreign Child Support Order

■ Mr. Morton next argues that the only method available for enforcement of a foreign support order is through the Uniform Reciprocal Enforcement of Support Act (URESA). Since Mrs. Morton did not utilize this method, he asks the Court to dismiss the complaint. This Court, however, concludes that Virgin Islands law permits three methods for enforcing a sister state's child support order or judgment: by filing an action under URESA, 16 V.I.C. §§ 391-429; by filing a common law action to enforce the foreign order or judgment; or by filing an action under the Uniform Enforcement of Foreign Judgments Act, 5 V.I.C. §§ 551-558.

#### 1. *URESA*

URESA was adopted by states all across the United States, the District of Columbia, Puerto Rico, Guam and the Virgin Islands, to provide a uniform method of enforcement of duties of support and is codified at 16 V.I.C. §§ 391-429. Because many states refused to aid non-resident dependents out of indifference, URESA "was designed to overcome this attitude . . . and to provide one set of procedures for enforcing support obligations where more than one

state was involved." *Government v. Audain*, 10 V.I. 275, 277 (D.V.I. 1973).

Under the provisions of URESA, it is the duty of the court of the responding state, upon receipt of the petition and certificate from the court of the initiating state, to determine whether the defendant has a duty to support the plaintiff and/or their child(ren), and if so, to order such support. Once the court in the responding state finds that there is a duty of support, it is free to determine the amount of the support that is now due and owing to the obligee, and further subject the property of the defendant to such order. *Lorillard v. Lorillard*, 358 F.2d 172 (3d Cir. 1966); *Dillon v. Pearce*, 30 V.I. 61, 63 (Terr. Ct. 1994).

■ The purpose of URESA is to provide a simple two-state procedure to enforce a duty of support expeditiously and with a minimum of expense. *Koon v. Boulder Cty., Dept. of Soc. Serv.*, 494 So.2d 1126 (Fla. 1986). Importantly, there is a general recognition among courts that URESA's proceedings are in addition to, and not in substitution of, any other remedies. *Koon*, 494 So.2d at 1129; *Wade v. Wade*, 552 So.2d 1279, 1281 (La. Ct. App. 1989); *State ex rel. Alleman v. Shoats*, 684 P.2d 1177, 1180 (N.M. Ct. App. 1984); *Smith v. Steen*, 833 S.W.2d 178, 179 (Tex. Ct. App. 1992). The Virgin Islands also recognizes this general principle. 16 V.I.C. § 393.

■ The Court is cognizant that this action was not brought pursuant to a URESA petition. There is, however, no doubt that it could have been. As the Third Circuit Court of Appeals stated in *Lorillard*, 358 F.2d at 176, 16 V.I.C. § 392(6) and § 423, "[empower] the [Territorial] Court of the Virgin Islands to enforce a duty of support which has been validly imposed upon the Defendant by a judgment, decree or order of the court of another State." Indeed, Mr. Morton concedes that this court has jurisdiction to civilly enforce support orders pursuant to URESA.

2. *Action on the foreign judgment*

At common law, the judgment of a sister state can not be enforced without the institution of an action based on that judgment. Such an action is considered to be a new and independent action which would seek the recovery of a judgment, based of

course, on the previous foreign judgment. Importantly, a creditor holding the foreign judgment cannot execute upon real or personal property within the forum state until the creditor has reduced the foreign judgment to a judgment of that state. 30 AM JUR. 2D *Executions* § 775 (1995).

According to the RESTATEMENT (SECOND) of CONFLICTS § 100 (1971), "[a] valid judgment for the payment of money rendered in a State of the United States will be enforced in a sister State . . . ."[2] Moreover, it is the local law of the forum which determines the methods by which a judgment of another state is enforced. *Id.* at § 99.

Mr. Morton asserts that an action cannot be maintained to enforce a foreign child support judgment as such judgments are interlocutory and not final judgments. His argument is without merit.

■ Each installment of child support becomes a final judgment when due. 16 V.I.C. § 368(a) provides as follows:

> Any payment or installment of support under any child support order, *whether pursuant to a court order or pursuant to an order entered by a hearing officer, shall be a final judgment by operation of law*, with the full force and effect of a judgment of the courts of the Virgin Islands, including the ability to be enforced, on and after the date on which the child support payment or installment is due.

(emphasis added). As a final judgment, this Court is directed by 16 V.I.C. § 368(b) that "[e]very child support judgment shall be entitled to full faith and credit in the Virgin Islands and in any of the United States, the District of Columbia, the Commonwealth of Puerto Rico or any other territory or possession of the United States."

■ Thus, as each installment of a child support order becomes a final judgment, it should be enforced as such. Virgin Islands case law and that of many other states have held that a child support

---

[2] The rules of the common law, as expressed in the restatements of the law, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local law to the contrary. 1 V.I.C. § 4.

order may be enforced as any other judgment. In fact, certain states, particularly California, treat accrued arrearages as a money judgment. *Mashburn v. Mashburn*, 555 So.2d 1123 (Ala. Civ. App. 1989) (accrued child support payments are final judgments as of the due date and may be collected as other judgments); *In Re Marriage of Ryan*, 27 Cal. Rptr. 2d 580, 582 (Cal. Ct. App. 1994) (Texas law treats arrearages as a final judgment for the amount due and owing); *In Re Marriage of Everett*, 269 Cal. Rptr. 917, 921 (Cal. Ct. App. 1990) (accrued arrearages are treated like a money judgment, each payment having become due under an extant judgment or order); *Jackson v. Jackson*, 124 Cal. Rptr. 101, 103 (Cal. Ct. App. 1975) (accrued arrearages are treated like a money judgment); *In Re Marriage of Greenblatt*, 789 P.2d 489, 491 (Colo. Ct. App. 1990) (child support arrears are debts which become final money judgments when due and not paid); *Dorsey v. Dorsey*, 408 N.E.2d 502, 504 (Ill. App. Ct. 1980) (child support arrearages constitute a vested right); *Matson v. Matson*, 310 N.W.2d 502, 505 (Minn. 1981) (provisions in a foreign judgment requiring payment of child support are final as to installments which have accrued and are entitled to full faith and credit); *Suarez v. Suarez*, 24 V.I. 3, 9 (Terr. Ct. 1988) (a judgment for child support arrearage was subject to enforcement by a writ of execution); *Maharaj v. Looknanan*, 18 V.I. 134, 139 (Terr. Ct. 1982) (the amount of child support arrearage due was imposed as a judgment lien on certain real property of the defendant).

Noteworthy is the singular importance and priority the Virgin Islands Legislature has placed on support obligations. Pursuant to 16 V.I.C. § 352(a), a "[j]udgment or order entered . . . against any person for the support of a person he or she is found obligated to support . . . shall take priority over all other financial obligations of said person, and shall be enforceable as such by the judgment creditor, provided such judgment is filed pursuant to the requirement of Title 5, section 425 of the Code or of this subchapter." 5 V.I.C. § 425 provides the procedure to establish a judgment lien and more specifically, section 425(e), provides that a judgment for overdue child support shall not expire.

Mr. Morton also cites to a portion of the Third Circuit's opinion in *Lorillard*, 378 F.2d 172, as support for his position. He, however,

41

has taken certain wording in the court's decision out of context. In that case, the Third Circuit questioned whether future support payments declared by a foreign court order could be enforced by the responding state, since such future payments are subject to modification due to the parties' changing circumstances. The Court concluded that such an order did not have the finality requirement and could be considered only provisional or interlocutory in nature.

■ Here, Mrs. Morton seeks to collect the child support arrears. As each child support installment becomes a final judgment on the date it is due, she is entitled to enforce the judgment in the courts of the Virgin Islands. And, the courts here are, in turn, required to give the California Order full faith and credit.

### 3. Uniform Enforcement of Foreign Judgments Act

The Virgin Islands enacted 5 V.I.C. §§ 551-558 on February 18, 1992, which is also referred to as the Uniform Enforcement of Foreign Judgments Act (UEFJA). Its purpose is "to provide a more effective and efficient time-saving procedure for the enforcement of judgments obtained in foreign jurisdictions." *Alexander Construction Co. v. Weaver*, 594 P.2d 248, 250 (Kan. Ct. App. 1979).

Pursuant to 5 V.I.C. § 552, a foreign judgment is defined as "any judgment, decree, or order of a court of the United States or any other court which is entitled to full faith and credit in the United States Virgin Islands." And, section 553 mandates that the Court "treat the foreign judgment in the same manner as a judgment of the Territorial Court of the Virgin Islands."

A party seeking to enforce a foreign judgment must, however, follow certain specific procedures set forth in the Act. First, the judgment creditor must file a copy of the foreign judgment "authenticated in accordance with an act of Congress or the statutes of the United States Virgin Islands" with the Office of the Clerk of the Territorial Court and pay a filing fee of Twenty Five Dollars ($25.00). 5 V.I.C. § 553 and § 556. Second, simultaneous with filing the foreign judgment, the judgment creditor or his attorney must file with the Clerk an affidavit providing the name and last known post office address of the judgment debtor and the judgment creditor. 5 V.I.C. § 554(a).

Upon the filing of the foreign judgment, the Clerk is required to mail notice of the filing to the judgment debtor at the address given and to also make a note of the mailing on the docket. In addition, the judgment creditor may mail a notice of the filing of the judgment to the judgment creditor and may file proof of mailing with the Clerk. 5 V.I.C. § 554(b).

Execution or other enforcement procedures on the foreign judgment are automatically stayed for a period of ten days after the date of the filing with the Clerk. 5 V.I.C. § 554(c). Thereafter, "the same procedures, defenses and proceedings for reopening, vacating, or staying . . . a judgment of the Territorial Court of the Virgin Islands" apply and the foreign judgment "may be enforced or satisfied in like manner." 5 V.I.C. § 553.

Importantly, UEFJA still preserves the alternative common law method for enforcement of a foreign judgment. 5 V.I.C. § 557 provides that "[t]he right of a judgment creditor to bring an action to enforce his judgment instead of proceeding under this subchapter remains unimpaired." Thus, a party can still file a common law action to enforce a foreign judgment rather than following the above procedure.

█ This Court, therefore, holds that a foreign child support order or judgment is a "foreign judgment" for the purpose of UEFJA; and that a judgment creditor may utilize this Act as one of the means to collect child support arrears. Indeed, this is in conformity with the express intent of the Virgin Islands Legislature and the direction taken by various states. E.g., *Matson*, 310 N.W.2d 505; *Hudson v. Hudson*, 569 P.2d 521 (Okla. Ct. App. 1977).

Although Mrs. Morton may have proceeded pursuant to UEFJA, she did not follow the procedures set forth in the Act. She filed a complaint with a summons, and served both on Mr. Morton. Additionally, neither she nor her attorney filed an affidavit containing her address or Mr. Morton's address. Moreover, in her complaint, she requested that the Court enter a judgment on the arrears. Again, the procedure she followed was consistent with filing a common law action to enforce or collect on a judgment.

**C. Enforcement of Court Order as Opposed to Breach of Contract**

Mr. Morton also argues that Mrs. Morton is seeking "to sue on

the agreement", and Mrs. Morton must, therefore, sue for breach of contract instead of enforcement of the Order. Her complaint would then be subject to the normal defenses for breach of contract, such as being in contravention of public policy and waiver. He asks the Court to dismiss the complaint on this basis as well.

Thus, the issue is whether Mrs. Morton may seek the enforcement of the Order or must sue upon the agreement, if a breach occurs. Our courts have previously addressed this issue in a similar context.

In *Pfister v. Pfister*, 21 V.I. 533 (Terr. Ct. 1985), the parties had executed a separation agreement in 1979 which was incorporated into a 1979 decree of separation, and which dispensed with the issues of alimony and division of property. Upon the parties' action to obtain a decree of divorce absolute, the Court was faced with how to enforce the separation agreement and found that there were two ways to proceed. The Court reasoned that the manner of enforcing the agreement rested on whether the agreement was merged into the decree. One, "[i]f the agreement was merged in the decree, then the original claim . . . is extinguished, is superseded by the judgment, and relief for failure to comply with the requirements and directions of the judgment must be sought by pursuing the route of having the defendant held in contempt and punished therefor." *Id.* at 537. And, two, if the agreement did not merge in the judgment, the Court concluded that the claims arising from the breach are not extinguished or superseded by the judgment and the correct course to pursue is an action for breach of the agreement, i.e., for breach of contract.

According to Homer H. Clark, Jr., THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 19.12, at 455 (1987), "[i]f the . . . agreement is 'incorporated' in the divorce decree, the courts find that the contractual obligations of the agreement are converted into obligations based upon the decree by a process called 'merger'." It is instructive to note that Clark's use of the word "incorporated" is synonymous with "merger" for these purposes. *Pfister*, 21 V.I. at 537.

▉ Clearly, the California Order incorporated the parties' settlement agreement. The last page of the Order itself states that

44

"[t]his stipulation shall be deemed incorporated in and made a part of the minute order by reference thereto, and as though the same were fully set forth therein." Indeed, Mr. Morton, himself, concedes that an Order was entered by the Superior Court of California as he states in his Motion to Dismiss that the California Court "incorporated the former settlement agreement into the Order by reference."[3] Moreover, Mrs. Morton specifically asserts that the agreement was read into the record at the divorce hearing, and became a valid California judgment.[4]

Mrs. Morton, therefore, is entitled to seek relief by enforcing the California Order, rather than suing for breach of contract.

## D. Enforcement After Child Attained Age of Majority

Lastly, Mr. Morton argues that Mrs. Morton is without authority to enforce the Order made on behalf of their daughter Jessica Sinclair Morton, who was born on October 18, 1972, since she is no longer a minor and is over the age of twenty-one, and Mrs. Morton no longer has custody of her. This position, however, is contrary to Virgin Islands law.

The Territorial Court has previously allowed a petitioner to institute a court action under URESA for enforcement and collection of child support arrearages eighteen years after the child support order was entered. *Dillon*, 30 V.I. 61. And, in *Watlington v. Canton*, 18 V.I. 203 (Terr. Ct. 1982), this Court allowed a plaintiff to bring suit to collect child support arrears almost twelve years after the entry of the divorce decree, which directed the defendant to pay child support, and after the child had attained the age of majority.

The general statute of limitations for the commencement of an action on a foreign or local decree or judgment is twenty years. 5 V.I.C. § 31(1)(B)(1967). Importantly however, although child support arrears are a judgment debt, in keeping with the priority our Legislature and the courts have given to support judgments over other obligations of the obligor in this Territory and the emphasis and concern for the best interests, welfare and mainte-

---

[3] Motion to Dismiss, page 2.
[4] Plaintiff's Complaint, paragraph 6.

45

nance of a child, Virgin Islands statutory law now provides, as stated previously, that a judgment for overdue child support shall not expire. 5 V.I.C. § 425(e).

■ Any parent who is awarded child support, including Mrs. Morton, is, therefore, entitled to seek to collect the child support arrearages for the child(ren) who may have attained the age of majority. Case law and statutory law are clear and unequivocal on this issue.

### CONCLUSION

In summary, Mr. Morton's Motion to Dismiss will be denied. To do otherwise would be to essentially declare a nullity to the uniform acts and significant local statutory law adopted to ensure that child support obligations are enforced. This opinion embodies the Court's eloquent conclusion in *Watlington*, 18 V.I. at 211, as follows:

> Modern times, unfortunately, have seen the breakdown of the family unit and the avoidance by far too many mothers and fathers of their parental obligations. By strictly enforcing Virgin Islands child support laws, the court is attempting to make it more and more difficult for a parent to avoid child support obligations. By so doing, the court hopes to prevent children from suffering any more than is absolutely necessary by the breakdown of a marriage or the absence of a father or mother from a home.

An appropriate Order will be entered.