# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. # 1204010456 |
| | ) | |
| COREY BOWERS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: April 17, 2017
Decided: July 31, 2017

**Upon Defendant's Motion for Postconviction Relief: DENIED**

This 31st day of July, 2017, upon consideration of Defendant's Motion for Postconviction Relief (the "Motion") under Superior Court Criminal Rule 61 ("Rule 61"), the submissions of counsel, and the record in this case, it appears to the Court that:

## FACTUAL AND PROCEDURAL BACKGROUND

1.      On April 14, 2012, as a woman walked into a drug store in New Castle, Delaware, she noticed a man standing outside. Upon leaving the store and getting into her car, the same man got into the woman's passenger seat. Pointing what appeared to be a gun at her, he demanded her car keys and grabbed her purse. The victim ran back into the drug store and called the police. A witness in the drug store heard the commotion, got into his own vehicle, and followed the suspect, who was driving the victim's car. Police officers eventually picked up the pursuit.

After losing sight of the suspect momentarily, officers found the victim's car crashed into a wall at the corner of 23rd and Washington Streets in Wilmington, Delaware. Inside the car were the victim's purse and a toy gun. Officers observed a man running away from the vehicle, and a foot chase ensued. Corey Bowers was caught and detained. Officers, with Bowers, returned to the drug store where the victim identified Bowers as the assailant and he was arrested.

2. In June 2012, Bowers was indicted for Carjacking First Degree and Robbery First Degree. After a four-day trial, the jury was unable to reach a unanimous decision, and the judge declared a mistrial. Around the time of trial, the victim received two letters threatening her and her family's safety if she appeared in court to testify against Bowers.[1] On April 15, 2013, Bowers was reindicted for Carjacking First Degree, Robbery First Degree, two counts of Aggravated Acts of Intimidation, two counts of Terroristic Threatening, and two counts of Misuse of Prisoner Mail. On July 16, 2013, following a four-day trial, a jury convicted Bowers of all charges. Bowers was sentenced on September 25, 2013.

3. John S. Edinger, Jr., Esq. ("Trial Counsel") represented Bowers throughout the course of both trials and sentencing. At trial, the victim identified Bowers as the man who stole her purse and car using what appeared to be a gun.

---

[1] The victim opened the first letter. She took a second, unopened letter to the police station.

She testified that on a scale of one to ten, ten being most certain that Bowers was the man who robbed her, she was a "ten."[2] James Bangert, who was in the drug store at the time of the incident, testified that the victim came into the store upset and reported: "He had a gun. He took everything."[3] Bangert then, in his own truck, followed the victim's car, simultaneously relaying information to police until officers arrived in the area.[4]

4. Corporal Jefferson Purner of the Wilmington Police Department testified that he discovered the victim's car crashed into the corner of 23rd Street and Washington Street in Wilmington, Delaware.[5] Corporal Purner testified that Bowers was the only person he saw running away from the area of the victim's car; Corporal Purner therefore followed Bowers and ordered him to stop.[6] Another Wilmington Police Officer, Corporal Steven Cancila, similarly testified that he saw no one else running away or toward the area.[7] Sergeant Thomas Carver of the Delaware State Police testified that he later observed a purse and the butt of a handgun on the front passenger's side floorboard of the victim's car.[8] Sergeant Carver testified that he secured the purse and gun as evidence and kept it in his

---

[2] D.I. 79 at A189.
[3] *Id.* at A191.
[4] *Id.* at A192-193
[5] *Id.* at A202.
[6] *Id.* at A202-A203.
[7] *Id.* at A208
[8] *Id.* at A195.

3

possession until turning it over to Detective Rizzo of the Delaware State Police.[9] Detective Steven Rizzo testified that the gun recovered from the victim's car was a toy gun that, based on its smell and "tacky" appearance, looked to have been painted recently. Detective Rizzo further testified that smudges consistent with the paint on the toy gun were found on both of Bowers' hands.[10] Finally, the State presented a forensic analyst who testified that Bowers' DNA matched the DNA recovered from the flaps of both envelopes containing the letters the victim received.[11]

5.     In his defense, Bowers called Sergeant Brian Burke of the New Castle County Police Department, who testified that he saw approximately eight to ten civilians when he arrived at the scene.[12] Bowers also called Joel Crooks-Deforrest, whose car was hit by the victim's car during the chase after the carjacking.[13] Mr. Crooks testified that police brought him to where the victim's car crashed and asked if Bowers was the person who hit his car, but Mr. Crooks was unable to make a positive identification.[14] Bowers also testified in his own defense. He admitted to smoking marijuana cigars and drinking alcohol the day of the incident but stated he was playing dice with at least seven other people when he noticed a

---

[9] *Id.* at A195.
[10] *Id.* at A235 & A241.
[11] *Id.* at A223.
[12] *Id.* at A243.
[13] *Id.* at A248
[14] *Id.* at A249.

black car heading straight for them.[15] Bowers merely was running out of the way of the car when police officers arrived and stopped him. On cross-examination of Bowers, the State introduced evidence of Bowers' prior convictions for Robbery First Degree and Criminal Impersonation.

6. The Court sentenced Bowers as follows: (1) as to Robbery First Degree, twenty-five years at Level V with credit for 283 days previously served, suspended after ten years at Level V for five years at Level IV DOC Discretion, suspended after eight months, followed by decreasing levels of supervision; (2) as to Carjacking, five years at Level V, suspended after two years for two years at Level III; (3) as to each Aggravating Act count, eight years at Level V, suspended after two years at Level V for one year at Level III; and (4) as to each Terroristic Threatening and each Misuse of Mail count, twelve months at Level V suspended for probation.[16] The Court also ordered a mental health evaluation and ordered Bowers to comply with all recommendations for counseling and treatment.[17] The Court noted: "Defendant takes no responsibility for his proven misconduct, and he is untruthful. Defendant applauded after the State made its sentencing recommendation."[18]

---

[15] *Id.* at A253-A255.
[16] *State v. Bowers*, 1204010456, at *1-3 (Del. Super. Sept. 25, 2013) (SENTENCING ORDER).
[17] *Id.* at *4
[18] *Id.*

5

7.    Bowers took a direct appeal to the Delaware Supreme Court with the assistance of Bernard J. O'Donnell, Esq. ("Appellate Counsel"). Appellate Counsel raised five issues on appeal: (1) the DNA process was highly questionable; (2) the State should not have been allowed to retry Bowers' case after it was hung; (3) he should be resentenced; (4) contrary to testimony at trial, surveillance video shows people besides Bowers near the victim's car after it crashed; and (5) it was not possible for him to have sent the threatening letters to the victim.[19] The Delaware Supreme Court rejected each such claim of error and affirmed the decision below.[20]

8.    Bowers filed a *pro se* motion for postconviction relief on June 3, 2014 (the "Original Motion").[21] Postconviction counsel then was appointed and filed this Motion on October 10, 2016, raising three claims of ineffective assistance of counsel. Specifically, Bowers alleges Trial Counsel was ineffective by failing to: (1) suppress the victim's out-of-court identification and in-court identification of Bowers; (2) adequately conduct a direct examination of Bowers; and (3) object to expert testimony.[22] By order dated September 6, 2016, the Court ordered Trial Counsel to respond by affidavit to the Motion and further ordered the State to

---

[19] Appellate Counsel filed a Non-Merit Brief under Rule 26(c) but also incorporated into that brief the five issues Bowers wanted to pursue on appeal. *See* D.I. 22.

[20] *Bowers v. State*, 2014 WL 2094133, at *2 (Del. May 16, 2014).

[21] D.I. 67.

[22] D.I. 78 at 15-27.

respond after Trial Counsel's affidavit was filed.[23] Finally, the Court granted Bowers time to respond to the submissions by Trial Counsel and the State. Bowers filed his response on April 17, 2017.[24]

## ANALYSIS

### A. Procedural bars to Bowers' claims

9. Before addressing the merits of any claim for postconviction relief, this Court first must determine whether the motion procedurally is barred under Rule 61.[25] A motion for postconviction relief is barred if it is untimely, repetitive, or procedurally improper, or if it formerly was adjudicated.[26] A motion filed under Rule 61 is untimely if it is filed more than one year after a final judgment of conviction.[27] A defendant also is barred from filing successive motions for postconviction relief.[28] The rule further prohibits motions based on any ground for relief that was not asserted in the proceedings leading up to the judgment of conviction, unless the movant demonstrates "cause for relief from the procedural default" and "prejudice from violation of the movant's rights."[29] Finally, the rule

---

[23] D.I. 76.
[24] D.I. 86.
[25] *See Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991); *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[26] *Bailey*, 588 A.2d at 1127.
[27] Super. Ct. Crim. R. 61(i)(1).
[28] *Id.* 61(i)(2); *see id.* 61(d)(2)(i)-(ii) (regarding the pleading requirements for successive motions).
[29] *Id.* 61(i)(3).

bars consideration of any ground for relief that previously was adjudicated in the case.[30]

10. Bowers filed the Original Motion, his first motion under Rule 61, less than a year after his sentence became final; it therefore neither is untimely nor repetitive. The Motion alleges ineffective assistance of counsel, which could not be raised at any earlier stage in the proceedings.[31] The State acknowledges that Bowers' Motion is timely and otherwise is not barred procedurally under Rule 61.[32] The Court therefore may consider the merits of Bowers' claims.

**B. Bowers has not shown Trial Counsel was ineffective.**

11. To prevail on a claim for ineffective assistance of counsel, a defendant must establish both that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.[33] There is a strong presumption that counsel's representation was reasonable.[34] Accordingly, a

---

[30] *Id.* 61(i)(4).

[31] *Whittle v. State*, 138 A.3d 1149 (Del. 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

[32] *See, e.g. Malloy v. State*, 2011 WL 1135107, at *2 (Del. Mar. 28, 2011) (citations omitted) ("Claims of ineffective assistance of counsel, however, are excused from [the Rule 61(i)(3)] requirement because these claims generally cannot be raised at trial or on direct appeal. Moreover, claims of ineffective assistance of counsel, if substantiated, can establish cause for a defendant's failure to raise his claims sooner."); *Brodie v. State*, 2011 WL 927673, at *1 (Del. Super. Mar. 17, 2011) (same); *State v. Ross*, 2004 WL 2735515, at *2 (Del. Super. Nov. 22, 2004) (same).

[33] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[34] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

defendant must make specific allegations of actual prejudice and substantiate them; vague allegations or conclusory statements will not suffice.[35]

12. Bowers' first claim of ineffective assistance has two sub-parts; Bowers contends Trial Counsel failed to (a) file a motion to suppress the victim's out-of-court identification or (b) object to the victim's in-court identification. In his affidavit in response to the Motion, Trial Counsel contends his decisions were strategic ones.[36]

13. Bowers fails to show that, had Trial Counsel moved to suppress the victim's identifications and prevailed, it reasonably is probable the jury would have reached a different verdict. Even without the victim's identifications of Bowers, sufficient evidence was presented to the jury to convict him. The police apprehended Bowers running from the area of the victim's crashed car. Bowers had smudges on his hands and the toy gun recovered from the car appeared to have been painted recently. Bowers' DNA was found on the two letters threatening the victim against testifying at Bowers' trial. Bowers' first argument therefore does not meet the prejudice prong of *Strickland*, and the Court need not consider whether Trial Counsel's decision not to object to the identifications was reasonable.

---

[35] *Id.*; *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015).
[36] D.I. 83 at 1.

14.     The second ground Bowers raises in support of his claim of ineffective assistance is that Trial Counsel did not adequately conduct a direct examination of Bowers as a witness. Specifically, Bowers alleges he was "forced to testify in the narrative" and "essentially put on the stand to defend the case for himself."[37] Bowers contends "Trial Counsel failed to appropriately present Mr. Bowers' testimony at trial, choosing instead to abandon him."[38] In his affidavit, Trial Counsel denies this charge, arguing Bowers "refused to share . . . what he intended to say on the stand" and "insisted that he read from a prepared text which [Trial] Counsel warned [Bowers] that the Court would not permit."[39] The Court, however, did allow Bowers, over the State's objection, to read what he had prepared.[40] Trial Counsel maintains Bowers "repeated [this narrative] at his second trial in spite of [Trial] Counsel's repeated warnings."[41] In his reply, Bowers asserts that Trial Counsel neither properly prepared nor actively communicated with Bowers throughout his representation.[42] He contends Trial Counsel allowed him to "ramble[] on for three pages of the transcript without

---

[37] D.I. 78 at 23.
[38] *Id.* at 24.
[39] D.I. 83 at 2.
[40] D.I. 79 at A252-A253. *State v. Johnson*, No. 30004633, 1992 WL 301637, at *3 (Del. Super. Oct. 20, 1992), *aff'd*, 620 A.2d 858 (Del. 1992) ("[T]he manner of the questioning of witnesses [is left] to the discretion of the trial judge."); *see also* D.R.E. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence . . . .").
[41] D.I. 83 at 2.
[42] D.I. 86 at 4.

10

being asked to focus on facts that were important to his defense." Bowers essentially argues that, but for Trial Counsel's failure to ask "pointed and focused questions," there is a reasonable probability the jury would have acquitted Bowers.[43]

15. Trial Counsel's affidavit establishes that his representation was reasonable under the circumstances. Bowers argues that had Trial Counsel conducted his direct examination differently, Bowers would have been less likely to "blurt out prejudicial statements." This argument is not supported by the record and does not meet the first prong of *Strickland*. The record reveals Bowers had a difficult time taking direction, evidenced by his behavior and dialogue with the judge during both trials.[44] For instance, during one exchange, the presiding judge responded: "Bowers, sir, are you done saying what you're going to say so that I can have my turn? . . . All right. If you don't want to let me get a word in edgewise, I've just got to say this, then, we'll let it go at that."[45] Bowers' unruly behavior even resulted in his removal from the first trial.[46] Furthermore, Bowers' decision to keep from Trial Counsel the contents of his testimony, which did not allow Trial Counsel to fully prepare Bowers, and then Bowers' insistence on

---

[43] *Id.*
[44] *See* D.I. 79 at A69, A99, A123 (first trial); *see also id.* at A203, 205, 206 (second trial).
[45] *Id.* at A99; *see also id.* at A124 (The Court: I will make an attempt to speak to Mr. Bowers about his decision to testify or not. If he'll talk to me in a reasonable way, then we'll see what he has to say. If he does not talk to me, then I'll declare another recess, and that will be the end of Mr. Bowers testifying.").
[46] D.I. 79 at A123.

11

testifying in the same narrative form for the second trial and against Trial Counsel's advice, does not demonstrate that Trial Counsel's representation fell below an objective standard of reasonableness.

16.     Finally, Bowers argues Trial Counsel was ineffective by failing to object to inappropriate expert testimony regarding the paint on the gun and the smudges on Bowers' hands.  In his response, Trial Counsel explains he believed at the time of trial that the testimony would not require specialized knowledge in the area of paint transfer.  Trial Counsel, however, agrees that in hindsight such testimony merited an objection.[47]  The State responds that Detective Rizzo's testimony, that "It was pretty evident just by the smell and by the fact that it was still wet that [the toy gun] had been recently painted . . . . It had . . . a bright or tacky look to it," was lay testimony, not expert, and therefore was admissible under D.R.E. 701.[48]

17.     Bowers fails to meet the second prong of *Strickland* because he has not demonstrated that, had Trial Counsel so objected to the testimony, it is reasonably probable the trial judge would have sustained such an objection.  The Detective testified as to what he observed; his testimony was not based on scientific, technical, or other specialized knowledge.  Trial Counsel properly objected to questioning from the State that exceeded Detective Rizzo's lay opinion,

[47] D.I. 83 at 2.
[48] D.I. 80 at 13 (citing D.I. 79 at A235).

such as his opinion of what the substance was on Bowers' hands.[49]  The jury was permitted to hear the Detective's own observations of what appeared to be fresh paint on the toy gun and what appeared to be smudges on Bowers' hands.  In other words, Trial Counsel's objection to Detective Rizzo's testimony would not have changed the outcome of the trial.  Accordingly, this claim, and the entirety of Bowers' Motion, fails to establish ineffective assistance of counsel.

**NOW, THEREFORE,** for the foregoing reasons, **IT IS ORDERED** that Corey Bowers' Motion for Postconviction Relief is **DENIED**.

_____
Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    Andrew J. Vella, Deputy Attorney General
        Matthew C. Buckworth, Esquire

---

[49] D.I. 79 at A241 (objecting to the "reference of black paint on the hand" as "not the . . . state of the evidence." The objection was sustained, and the judge instructed the jury: "[O]ne of the facts that's in contention in this case is what, if anything, was on the hand.  So to the extent that somebody offers an opinion about that, it's for you in the end to decide what you think has been proved.").